ELIZABETH MACKUBIN LYMAN *vs*. NEW ENGLAND NEWSPAPER PUBLISHING COMPANY.

CHARLES FREDERICK LYMAN, JR., *vs*. SAME.

Suffolk.    January 3, 1934. — May 23, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Libel.    Pleading, Civil*, Declaration.    *Husband and Wife.*

Declarations, in actions of tort for libel by a man and by his wife against the publisher of a newspaper, contained allegations that the defendant published a statement in substance that there was "news of a 'rift in the lute'" of the plaintiffs "but by this time that may not mean a thing"; that the phrase "rift in the lute" was well understood as an adaptation from lines in Tennyson's "Idylls of the King"; that the defendant meant by said publication that a breach had occurred in the marital relations of the plaintiffs which would naturally and in due course lead to their divorce or legal separation; that the statement was false; and that, thereby, the plaintiffs were exposed to hatred, ridicule, and contempt, their peace of mind was disturbed, and their standing with a considerable and respectable class in the community was hurt, all to their damage.    The defendant demurred. *Held*, that

    (1) The statement explaining the defamatory sense in which the words "rift in the lute" were used was proper by way of innuendo;

    (2) To say in print of a husband and wife that they have ceased to live together in harmony does some injury to the reputation of each;

    (3) The declaration set out a cause of action in tort for libel.

The declaration in the action by the husband above described contained a further allegation that "his standing . . . both socially and in his business as an insurance broker, was hurt."    Upon demurrer by the defendant, it was *held*, that the allegation of special damage was not subject to demurrer.

TWO ACTIONS OF TORT.    Writs dated August 10, 1933.

The declarations and demurrers thereto are described in the opinion. In the Superior Court, the demurrers were heard and were sustained by *Dillon*, J. The plaintiffs appealed.

The cases were argued at the bar in January, 1934, before *Rugg*, C.J., *Crosby*, *Pierce*, *Wait*, & *Field*, JJ., and afterwards were submitted on briefs to all the Justices.

*C. G. Smith, Jr.*, for the plaintiffs.

*B. C. Perkins*, for the defendant.

RUGG, C.J. These are two actions for libel. The plaintiffs are husband and wife. Save as to names, the declarations are substantially identical except that there is an allegation of special damages in that of the husband. Each declaration states the name and residence of the plaintiff and the marriage existing between the two plaintiffs. The declarations state that the defendant is a corporation which publishes and circulates throughout the Commonwealth a newspaper which usually contains, among other matters, a column of tattle under the caption "'beacon hill' by Betty Alden"; that on July 19, 1933, the defendant falsely and maliciously printed and published of the plaintiffs, in said column, the words following: "Marblehead is a wonderful spot in which to spend a summer . . . there is always something to do, sailing, motoring, antique hunting, bathing and let us not forget gossiping . . . we hadn't been down there 10 minutes when a sudden breeze brought us the news of a 'rift in the lute' of the Freddie Lymans but by this time that may not mean a thing . . ."; that the phrase "rift in the lute" is an adaptation frequently employed and well understood from the lines in Tennyson's "Idylls of the King":

> "It is the little rift within the lute
> That by and by will make the music mute
> And ever widening slowly silence all";

that the defendant meant by said publication that a breach had occurred in the plaintiffs' marital relations, which would naturally and in due course lead to a divorce or

legal separation; that in truth, the plaintiffs were strongly attached to each other and there was no basis for the defendant's calumny aforesaid; that by reason of said publication the plaintiffs were exposed to hatred, ridicule, and contempt, their peace of mind was disturbed, and their standing with a considerable and respectable class in the community was hurt, all to their damage as set forth in the writs. In the action of Charles Frederick Lyman, Jr., the last paragraph of the declaration was enlarged by the addition thereto of the words, "and his standing . . . both socially and in his business as an insurance broker, was hurt."

The defendant demurred to the plaintiff's declaration in each action, and assigned as grounds therefor the following reasons: (1) "That said declaration does not state a legal cause of action substantially in accordance with the rules contained in G. L. c. 231"; (2) "That the alleged publication set forth in said declaration contains nothing which is libellous of or concerning the plaintiff"; and (3) "That the declaration does not set forth anything which is libellous by its natural import or in connection with any of the facts stated or which furnishes legal ground for an action of libel by the plaintiff against the defendant." In each action the demurrer was sustained by a judge of the Superior Court, and the plaintiff appealed "from the order of the court sustaining the defendant's demurrer." The actions are before this court on the plaintiffs' appeals.

It is plain that the article printed concerned the plaintiffs, and it is not contended by the defendant that it did not naturally have reference to the matrimonial relations of the plaintiffs. The words printed in a libel are to be read in their natural sense with the meaning which they would convey to mankind in general. The innuendo in the declarations, that the phrase "rift in the lute" is well understood as an adaptation from lines in Tennyson's "Idylls of the King," and that the defendant meant by said publication that a breach had occurred in the marital relations which would naturally and in due course lead to divorce or legal separation, while not enlarging the language used

in the publication, was in substance a specification of the defamatory sense in which the words were used. As matter of pleading the declarations were proper with an innuendo. G. L. (Ter. Ed.) c. 231, § 147, Forms, 18, Instruction, page 2893. If the words of a libel are clearly defamatory, no innuendo is necessary; if incapable of a defamatory meaning, innuendo will not make them so; but if reasonably susceptible of two or more meanings, one of which is defamatory, an innuendo may be necessary. *Morrill* v. *Crawford*, 278 Mass. 250, 253–254. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 453, 455. See Odgers, Libel and Slander (6th ed.) pages 98–117. The words "'rift in the lute' of the Freddie Lymans but by this time that may not mean a thing" are not defamatory *per se*. That is not the sole test. The question still remains whether in their setting they were libellous. It was said in *Clark* v. *Binney*, 2 Pick. 113, 115, that "the most clear and precise definition of a libel, as applicable to personal actions, is contained in the opinion of the late Chief Justice *Parsons*, in the case of *Commonwealth* v. *Clap*," 4 Mass. 163, 168. It is there stated that a libel is "a malicious publication, expressed either in printing or writing, or by signs and pictures, tending either to blacken the memory of one dead, or the reputation of one who is alive, and expose him to public hatred, contempt, or ridicule." These words by Field, J., are found in *Twombly* v. *Monroe*, 136 Mass. 464, 469: It is only when "the court can say that the publication is not reasonably capable of any defamatory meaning, and cannot reasonably be understood in any defamatory sense, that the court can rule, as matter of law, that the publication is not libellous." *Robinson* v. *Coulter*, 215 Mass. 566, 570. *Morgan* v. *Republican Publishing Co.* 249 Mass. 388, 390. Printed words are also actionable which, although not in themselves defamatory, convey an imputation upon one in connection with his profession, trade, or occupation. *Morasse* v. *Brochu*, 151 Mass. 567. *Merrill* v. *Post Publishing Co.* 197 Mass. 185, 193. *Barnett* v. *Loud*, 226 Mass. 447, 449. Reference was made in *Craig* v. *Proctor*, 229 Mass. 339, 340, to words as

defamatory which tend "to expose the plaintiffs to aversion and disgrace, and to disseminate an evil opinion of them in the community." *Peck* v. *Tribune Co.* 214 U. S. 185, was an action of libel for publishing by way of advertisement a picture of a total abstainer with the statement that she was a nurse and paid an eloquent tribute to "Duffy's Pure Malt Whiskey." It was said by the court at page 190: "obviously an unprivileged falsehood need not entail universal hatred to constitute a cause of action. No falsehood is thought about or even known by all the world. No conduct is hated by all. . . . It seems to us impossible to say that the obvious tendency of what is imputed to the plaintiff by this advertisement is not seriously to hurt her standing with a considerable and respectable class in the community." In Odgers, Libel and Slander (6th ed.) pages 16–17, occur these statements: "In cases of libel, any words will be deemed defamatory which appreciably injure the reputation of another, which make men think worse of him. All written words, which expose the plaintiff to hatred, contempt, ridicule or obloquy, which tend to injure him in his profession or trade, or which cause him to be shunned or avoided by his neighbors, are libellous. . . . Any printed or written words are defamatory which impute to the plaintiff that he has been guilty of any crime, fraud, dishonesty, immorality, vice or dishonourable conduct, or has been accused or suspected of any such misconduct, or which have a tendency to injure him in his office, profession, calling or trade. And so, too, are all words which hold the plaintiff up to contempt, hatred, scorn or ridicule, and which, by thus engendering an evil opinion of him in the minds of right-thinking men, tend to deprive him of friendly intercourse and society."

The wrong done by defamatory printed statements is injury to reputation. It is a lessening of the goodness of opinion which one's acquaintances and associates in society, in business, or in the neighborhood may hold of him. The community in truth is not highly judicial as to the factors which in combination form the opinion or reputation of a man held by his fellow men. There is a tendency

among some to be somewhat censorious and to attach weight to mean and slighting remarks about one's affairs or relations with others which a more just attitude would reject unless supported by proof.   Human nature, however, must be taken as it is in determining the effect a particular falsehood may have on that tribunal which constitutes public opinion and establishes reputation.   In pagan as well as in religious philosophy, the marriage relation has been idealized.   Among the attributes of a high ideal of marriage is harmonious living together.   That is a traditional accompaniment and end of successful marriage. The standing in the community of a man and woman joined in marriage who achieve that goal has been in the past, and we think today is, higher than that of a man and woman who have failed to reach it.   It forms the basis of the rule which people in general, regardless of the concord and harmony of their own married lives, apply to the marriages of others.   We do not think that modern conditions have changed this ideal.   The conclusion, in our opinion, is that to say in print of a husband and wife that they have ceased to live together in harmony does some injury to the reputation of each.   *Woolworth* v. *Star Co.* 97 App. Div. (N. Y.) 525.   *O'Neill* v. *Star Co.* 121 App. Div. (N. Y.) 849.

The fact that the publication alleged to have been made falsely by the defendant did not discriminate and apportion the blame between the husband and wife does not prevent such publication as to matrimonial relations being libellous as to both.

This is an action for libel and not for slander.   The allegation of special damages in his business in the action by the husband is not subject to demurrer.   If special damages of a substantial nature are sought, it may be necessary to file further pleadings.   The defendant may also move for specifications.   *Craig* v. *Proctor*, 229 Mass. 339, 342.

In each case in the opinion of a majority of the court the entry may be

*Order sustaining demurrer reversed.*