52 N.J. Super. 152 (1958)
145 A.2d 56
EMANUEL GERSTEN AND LILLIAN GERSTEN, HIS WIFE, PLAINTIFFS,
v.
NEWARK MORNING LEDGER CO., AND/OR S.I. NEWHOUSE, PUBLISHER, PHILIP HOCKSTEIN, EDITOR AND/OR "JOHN DOE," REPORTER, SAID NAME BEING FICTITIOUS AND UNKNOWN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 25, 1958.
*153 Mr. Emanuel Gersten, attorney for plaintiffs.
Mr. Harold Krieger, attorney for defendants.
FULOP, J.C.C. (temporarily assigned).
The plaintiffs move for a summary judgment as to liability alone in an action for libel.
The plaintiff husband is an attorney at law of this State and has held the position of township attorney of the Township of Hillside. He has been a candidate for elective office. The plaintiffs allege that they have been "happily married since July 9, 1933" and the plaintiff husband verifies this by affidavit. There is no contradictory verification.
On December 18, 1957, defendant corporation published in its newspaper the following article:

"WIFE TROUBLE HOLDS UP JOBS.
HILLSIDE  A divorce suit upset the political applecart at last night's Township Committee meeting.
Three top appointments were shelved at least temporarily, because of Township Attorney Emanuel Gersten's pending divorce trial.
Before the session began, Gersten was slated to be named assistant attorney for 1958 with Magistrate Sidney Birnbaum taking the top attorney post. Former Mayor Henry Goldhor was to succeed Birnbaum as Magistrate.
On the positive side, Adolph A. Winston was announced as successor to Mayor V. William Di Buono, effective Jan. 1."
Plaintiffs allege and it is admitted that plaintiffs were not involved in a divorce trial or "wife trouble," and the fact is orally conceded that the plaintiff husband's name was erroneously given in place of that of another person who was involved in a divorce proceeding. Defendant alleges that it published a complete retraction and apology on the following day.
Both sides concede that the publication complained of did not result in the loss of the appointment referred to therein. Plaintiffs contend that the publication is libelous per se and injured their general reputation and injured the plaintiff husband in his professional reputation as a lawyer and public official.
*154 Defendants in their answer admit the publication and allege lack of knowledge and deny most of the other allegations of the complaint. They also assert the following affirmative defenses:
1. The words published do not have the defamatory sense averred and are not defamatory.
2. Absence of malice.
3. Absence of damages.
4. Privilege.
5. Publication of retraction.
6. Reasonable care.
7. Unavoidable mistake.
Truth is not pleaded and, in view of the retraction, is obviously not a defense.
It seems clear that none of the affirmative defenses pleaded are valid legal defenses as to liability except the denial of defamatory meaning. As between the plaintiffs and the defendant corporation, the sole question as to liability is whether or not the publication is on its face defamatory as a matter of law without innuendo or extrinsic evidence.
It has not been contended that the article referred to a divorce trial in which Mr. Gersten was engaged as an attorney. In view of the heading "Wife Trouble Holds up Jobs" and the context, the article clearly refers to personal divorce proceedings. Admitting that this meaning was intended, defendants take the position that a false publication that a man is having "wife trouble" and is suing or being sued for divorce is not defamatory.
"* * * when the words used are unambiguous in meaning but would be taken by some but not all persons in a given community to disparage the reputation of the plaintiff because of differing attitudes as to whether the conduct or character imputed to the plaintiff was reprehensible * * * the most authoritative viewpoint is that the words are actionable if the plaintiff would be demeaned thereby in the eyes of a substantial number of respectable people in the community, whether or not all so called `right thinking' people would take the same view." Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420, 439 (App. Div. 1958).
*155 Thus the question is whether the plaintiff would be demeaned by the false statements in the eyes of a substantial number of respectable people.
It is common knowledge that a very substantial segment of the respectable population deem it disgraceful and even sinful to procure a divorce. To be sued for divorce in this State involves a charge of one of three wrongful courses of conduct, namely, adultery, extreme cruelty or desertion. There seems no escaping the conclusion that to be a party to a divorce proceeding suggests conduct disapproved by many respectable people. It does not establish guilt. Neither does an indictment. Yet, who can say that it is not injurious to reputation to be indicted?
Reputation is a fragile flower. A breath of unfounded scandal is often sufficient to wither it. Many may fail to read the retraction. Many may forget the details of the incident, but nevertheless long remember that there was once something derogatory in the press about an individual.
The injury may well be aggravated in the case of the plaintiff husband who is an attorney and who was a public official. Impeccable character is an essential ingredient of professional fitness for an attorney. His livelihood depends upon the degree to which he is trusted in the community. However, that may well go to the question of damages rather than to liability in this case, since the words published, if untrue, would be libelous with respect to anyone.
There does not appear to be any New Jersey case directly dealing with a false publication of marital discord. The cases elsewhere in the nation are not numerous. The majority view appears to hold that such publications are libelous per se.
In 33 Am. Jur., Libel and Slander, § 47, it is said:
"* * * To say in print of a husband and wife that they have ceased to live together in harmony does some injury to the reputation of each, and the fact that the publication does not apportion the blame between the husband and wife does not prevent it from being libelous to both. * * *"
*156 * * * It is likewise libelous per se falsely to publish of a wife that her husband has instituted an action for divorce against her. * * *"
In Lyman v. New England Newspaper Publishing Co., 286 Mass. 258, 190 N.E. 542, 92 A.L.R. 1124 (Sup. Jud. Ct. 1934), the alleged libel published in a newspaper consisted of the following:
"* * * A sudden breeze brought us the news of a `rift in the lute' of the Freddie Lymans, but by this time that may not mean a thing. * * *"
Husband and wife both sued for libel, alleging by way of innuendo that the quoted material meant that a breach had occurred in the marital relations of the plaintiffs. The trial court sustained a demurrer to the complaint. This action was reversed on appeal. Chief Justice Rugg said for the Massachusetts Supreme Court:
"* * * In pagan as well as in religious philosophy, the marriage relation has been idealized. Among the attributes of a high ideal of marriage is harmonious living together. That is a traditional accompaniment and end of successful marriage. The standing in the community of a man and woman joined in marriage who achieve that goal has been in the past, and we think to-day is, higher than that of a man and woman who have failed to reach it. It forms the basis of the rule which people in general, regardless of the concord and harmony of their own married lives, apply to the marriages of others. We do not think that modern conditions have changed this ideal. The conclusion, in our opinion, is that to say in print of a husband and wife that they have ceased to live together in harmony does some injury to the reputation of each. [Citations]
The fact that the publication alleged to have been made falsely by the defendant did not discriminate and apportion the blame between the husband and wife does not prevent such publication as to matrimonial relations being libelous as to both. * * *"
It will be noted that the publication in the cited case did not contain the plain language contained in the present publication and required an innuendo to show that the words "rift in the lute" meant domestic inharmony as used. Chief Justice Rugg held that the innuendo was required in that case under the following rule:
*157 "* * * If the words of a libel are clearly defamatory, no innuendo is necessary; if incapable of a defamatory meaning, innuendo will not make them so; but if reasonably susceptible of two or more meanings, one of which is defamatory, an innuendo may be necessary. * * *"
Under the same rule, it seems clear that no innuendo is required in the present case.
It seems immaterial that the plaintiff wife was not mentioned by name in the article. She is referred to in the term "wife trouble" and is clearly identified. Plaintiff is presumed to have only one wife, and a divorce action can be maintained only between husband and wife. The plaintiff husband's affidavit has not been controverted.
Under N.J.S. 2A:43-2, the retraction excludes punitive damages. It has no affect on liability. Both general and special damages may be recovered. Bock v. Plainfield Courier-News, 45 N.J. Super. 302 (App. Div. 1957), and cases cited therein. No punitive damages are claimed in this case. Special damages may be recovered if alleged and proved. Otherwise, plaintiffs will be confined to general damages.
It is my conclusion that there is no fact issue as to liability between the plaintiffs and the defendant Newark Morning Ledger Co.
As to the defendant Philip Hockstein, there is no proof before the court as to the extent of his control of the publication or any personal connection therewith. If plaintiffs desire to persist in their claim against the editor as well as the owner of the newspaper, they will have to establish the elements of personal responsibility indicated in Faulkner v. Martin, 133 N.J.L. 605 (E. & A. 1946). See also Wilson v. Savino, 10 N.J. 11 (1952).
The motion for interlocutory summary judgment is denied as to the defendant Philip Hockstein and granted as against the defendant Newark Morning Ledger Co.