Argued July 7, reversed October 20, petition for rehearing
denied November 16, 1971

ANDREASON, *Respondent, v.* GUARD
PUBLISHING CO., *Appellant.*

489 P2d 944

*Robert D. Woods,* Eugene, argued the cause for appellant. With him on the briefs were Riddlesbarger, Pederson, Young & Horn, Eugene.

*William Frye,* Eugene, argued the cause for respondent. With him on the brief were Husband, Johnson & Frye, Eugene.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

O'CONNELL, C. J.

This is an action for libel resulting from a news story published in defendant's newspaper. The jury returned a verdict in the amount of $5,000. Defendant appeals from a judgment entered on that verdict.

The news story containing the alleged libel was as follows:

"EUGENE MAN HELD, CHARGED WITH ASSAULT

"Charles Wallace Andreason, 29, of 2680 Tomahawk Pl., Eugene, was being held in the city-county jail in lieu of $2,000 bail Tuesday morning on a charge of assault with a deadly weapon.

"Andreason is accused of shooting Charles Neff Culmer, 33, of Medford at about 2:30 Tuesday morning. The incident occurred outside the Andreason residence, police reports said.

"Culmer suffered a flesh wound in the thigh and was listed in fair condition at Sacred Heart Hospital.

"According to Eugene police reports, Andreason said he lost control of himself when he saw his wife, Carol Maxine Andreason, 29, sitting in the car with Culmer.

"Mrs. Andreason told officers she and her husband are separated and in the process of getting a divorce."

The statement alleged to be false and libelous is the last paragraph of the foregoing news story. Plaintiff denied that she and her husband were separated and in the process of getting a divorce and that she had made such a statement. The news story was written by one of defendant's reporters after reading an arrest report filed by a police officer in the Eugene City Police Department. The arrest report contained the following statement: "Culmer stated that Mrs. Andreason had advised him that she and her husband were separated and she was in the process of getting a divorce."

At the close of plaintiff's case defendant moved for a judgment of involuntary nonsuit on the ground that there was not sufficient evidence to support a verdict for plaintiff. Defendant based its motion on two theories: (1) that even if the publication of the statement is regarded as defamatory, defendant was protected under the First Amendment of the U. S. Constitution, and (2) that the statement was not defamatory on its face.

We are of the opinion that the statement was neither defamatory on its face nor subject to being interpreted as defamatory by reason of extrinsic cir-

cumstances. Therefore the motion for a nonsuit should have been granted.

■ A statement that a husband and wife are separated and are in the process of getting a divorce would not in itself subject either of them to hatred, contempt or ridicule, nor tend to diminish the esteem, respect, goodwill or confidence in which each is held or to excite adverse, derogatory or unpleasant feelings or opinions against them.[1] It is possible that an earlier-day separation or divorce carried with it a stigma which would tend to demean those who were parties to it. There are cases which have seen the matter in this light.[2] The courts in these cases may have correctly sensed the mores of their time. But mores change and it is our opinion that in modern society, where divorce or separation commonly results simply from the incompatability of husband and wife, there is no significant diminution in esteem for those who legally separate or seek divorce. We conclude, therefore, that the statement made by defendant in this case, if false, was not libelous on its face.[3]

---

[1] The definition is adopted from Prosser on Torts, p. 756 (3d ed 1964).

[2] Gersten v. Newark Morning Ledger Co., 52 NJ Super 152, 145 A2d 56 (1958); Lyman v. New England Newspaper Publishing Co., 286 Mass 258, 190 NE 542, 92 ALR 1124 (1934). In the former case the court said, "It is common knowledge that a very substantial segment of the respectable population deem it disgraceful and even sinful to procure a divorce." 145 A2d at 57.

[3] A different problem is presented when the defendant falsely states that one spouse is seeking a divorce from the other, since in that case the public may impute to the latter improper conduct warranting a divorce and thus it may be argued that such imputation would diminish public esteem for the plaintiff. See for example, Gariepy v. Pearson, 207 F2d 15 (D.C. Cir 1953); Thackrey v. Patterson, 157 F2d 614 (D.C. Cir 1946); Hinsdale v. Orange County Publications, Inc., 17 NY2d 284, 270 NYS2d 592, 217 NE2d

■ It is our conclusion also that the statement does not carry a defamatory meaning by reason of extrinsic circumstances. It is possible that the circumstances correctly reported by defendant would cause the public to assume that plaintiff was conducting herself improperly with Mr. Culmer and from this it is possible that the public might infer that her association with Culmer was the source of her marital difficulty prompting her husband to bring divorce proceedings.

Assuming that such a connection can be made between plaintiff's conduct and defendant's statement, we regard it as too tenuous to form a basis for liability. The possible inference of misconduct on the part of plaintiff is made more tenuous by the fact that the defendant's statement did not in any way suggest that plaintiff was being sued for divorce; defendant stated only that plaintiff and her husband were in the process of getting a divorce.

There being no basis for liability, it was not necessary to determine whether the statement in question was privileged under the First Amendment of the U. S. Constitution as interpreted in *Rosenbloom v. Metromedia, Inc.,* 403 US 29, 91 S Ct 1811, 29 L Ed 2296 (1971).

The judgment of the trial court is reversed.

TONGUE, J., dissenting.

I cannot subscribe to the holding by the majority that the publication by defendant's newspaper of a false statement that defendant told officers that "she

650 (1966); Brown v. DuFrey, 1 NY2d 190, 134 NE2d 469 (1956); Sydney v. MacFadden Newspaper Publishing Corp., 242 NY 208, 151 NE 209, 44 ALR 1419 (1926); O'Neill v. Star Co., 121 App Div 849, 106 NYS 973 (1907); Pitts v. Spokane Chronicle Company, 63 Wash2d 763, 388 P2d 976, 9 ALR3d 550 (1964).

and her husband are separated and in the process of getting a divorce," when such was not a fact, does not "tend to diminish the esteem, respect, good will or confidence," in which such a person is held or "excite adverse, derogatory, or unpleasant feelings or opinions against them."

On the contrary, I am of the opinion that even though such a result may no longer be justifiable, the publication of such a false report still has such a result in actual fact because at least a substantial segment of society today still views divorce with disfavor. I am also of the opinion that most married men and women today, if made the subject of the publication of such a false report, would subscribe to such a view. Thus, under somewhat similar facts the court observed in *Gersten v. Newark Morning Ledger Co.,* 52 NJ Super 152, 145 A2d 56, 58 (1958):

> "Reputation is a fragile flower. A breath of unfounded scandal is often sufficient to wither it. * * * Many may forget the details of the incident, but nevertheless long remember that there was once something derogatory in the press about an individual."

See also Prosser, Law of Torts 740-41 (4th ed 1971). The majority has cited no authority directly to the contrary.

I also dissent from the opinion by the majority because it does not decide the primary issue presented for decision in this case—whether defendant newspaper was protected from liability arising from the publication from such a false statement by the First Amendment of the Constitution of the United States. A necessary incident to that issue is the question whether the recent decision by the Supreme Court of

the United States in *Rosenbloom v. Metromedia,* 403 US 29, 91 S Ct 1811, 29 L ed 2d 296 (June 7, 1971), requires such a holding in this case or whether that decision must be distinguished for the reason, among others, that the State of Oregon has adopted a "retro-action" statute (ORS 30.160) and that in this case defendant apparently refused plaintiff's request for publication of a retraction in accordance with the terms of that statute. (See 403 US at 47).

For these reasons I most respectfully dissent.

BRYSON, J., joins in this dissent.