STATE HIGHWAY AND PUBLIC WORKS COMMISSION v. EDDIE COBB (ORIGINAL PARTY DEFENDANT), AND IRENE COBB (ADDITIONAL PARTY DEFENDANT).

(Filed 3 May, 1939.)

**1. State § 2b—**

The State Highway and Public Works Commission, as successor to the State Prison Department, chapter 172, sec. 32, Public Laws of 1933, C. S., 7698, has implied power to maintain an action in its corporate name on behalf of the State.

**2. Same—**

While the State may maintain an action in tort for injury to its property, it has no right of action in tort arising out of the commission of a crime against its sovereignty.

**3. Same: Escape § 6—**

The State may not recover of a prisoner moneys expended by it to recapture him after his escape from custody, since the escape does not invade any property right of the State, but the expenditure of the sums is voluntary and made by it for the protection of the people of the State in preserving the integrity of the penal system.

CLARKSON, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff and defendant Eddie Cobb from *Ervin, Jr., J.,* at November Term, 1938, of WAKE. Reversed.

The State Highway and Public Works Commission brought this action to recover the expenses of the recapture and return to the State Prison of one Eddie Cobb, who had escaped from custody during the year 1937. The amount sued for was $1,134.21. On motion of plaintiff a receiver was appointed, who took charge of defendant's property—a Chrysler automobile—and sold it under order of the court *pendente lite,* receiving therefor the sum of $671.55, which sale was confirmed. Out of the proceeds a $10.00 advertisement charge was paid and the remaining proceeds held subject to order of the court.

Defendant's wife was permitted to interplead and set up title to the car. Protesting the validity of the State's claim, and the authority to make the sale, the defendant, nevertheless, claimed his exemption of $500.00 as a resident of this State, and it was agreed that the proceeds received at the sale should stand in lieu of the car.

The case was heard without a jury by Judge S. J. Ervin, Jr., on admitted facts, and, thereupon, Judge Ervin made his findings of fact and conclusions of law and entered judgment that defendant's intervening wife had no valid claim to the moneys in the hands of receivers. It was further adjudged that plaintiff was entitled to recover on its demands, but that the defendant was entitled to his personal property exemption as a resident of the State.

The judgment provided for delay in the distribution of the funds, after paying costs, until after an appeal might be heard in the Supreme Court. Both plaintiff and defendant Eddie Cobb appealed.

*Charles Ross for plaintiff.*
*Wm. B. Oliver for defendant.*

## APPEAL OF DEFENDANT EDDIE COBB.

SEAWELL, J. This interesting case is admittedly novel in the history of jurisprudence in so far as the attorneys concerned, and the court as well, are aware. Without precedent to guide us, we do not find in the argument of the able counsel for the plaintiff sufficient legal ground to sustain the judgment of the trial court.

Under the law creating the State Highway and Public Works Commission, that body succeeded to all the rights and powers and duties of the State Prison Department—ch. 172, sec. 32, Public Laws of 1933. Although the act incorporating the State Prison Department—see Consolidated Statutes, ch. 130, sec. 7698—does not expressly confer on it the power to sue, and does expressly provide that suits against it shall be construed as brought against the State, we assume that it has that implied power, and it has been recognized by the courts. *State's Prison v. Hoffman,* 159 N. C., 564, 76 S. E., 3. The infirmity of plaintiff's case

does not consist in an inability to sue, generally speaking, but its inability to maintain this particular suit; and in considering this question we are forced to consider the suit as brought on behalf of the State to recover funds expended for defendant's recapture and return to prison.

The plaintiff bases its action on tort. It is difficult to see how an actionable tort could arise out of defendant's criminal offense in effecting his escape from custody, or his status as a fugitive from justice. The step from one to the other is a bit too long for the judicial stride. "The distinction between a tort and a crime with respect to the character of the rights affected and the nature of the wrong is this: A tort is simply a private wrong in that it is an infringement of the civil rights of individuals, considered merely as individuals, while a crime is a public wrong in that it affects public rights and is an injury to the whole community, considered as a community, in its social aggregate capacity." 16 C. J., p. 54; Black's Law Dictionary, 2nd, p. 299.

"Crime is an offense against the public pursued by the sovereign, while tort is a private injury which is pursued by the injured party." 14 Am. Jur., p. 755.

If a tort is pursued by the sovereign, it must be with respect to the same sort of right and in the same way as may be allowed a private citizen. This is a part of the definition. A sovereign, who is also a natural person, may, of course, bring an action for tort in his individual capacity and with respect to his individual and proprietary rights. Authorities are somewhat divided as to where sovereignty lies in a Republican State; Story on the Constitution, paragraph 270; *Filbin Corporation v. U. S.,* 266 Fed., 911, 915; but the term is still useful in providing categories affecting rights and liabilities. *Warrenton v. Warren County, ante,* 342.

The State constitutes a sort of intangible sovereignty. Legally speaking, it cannot be assaulted, slandered, or injured as an individual with respect to a personality that it does not possess. But it does own property and has property rights which might be the subject of invasion. If a wrong is committed against it in the nature of a tort, it must be with respect to such a right.

It does not appear that the defendant has invaded any property right of plaintiff except that which may be involved in the expenditure of the State's public funds for his apprehension after his escape. Since his recapture was a public duty required by law under a general system which the State has established, the position of the sovereign towards such a public expenditure can scarcely be that of a private individual who has been compelled to spend money because of the tortious conduct of another. Indeed, in point of legal logic, defendant's yen for the open spaces and his answer to the call of the wild was rather the

occasion than the cause of the expenditure, or, at least, it did not afford the compulsion. While his flight was contrary to the will of the sovereign, as expressed in its law, the expenditure for his recapture was voluntary.

No crime against the sovereignty of the State violates any of its property right, and no governmental expenditure paid out for apprehension of a criminal or the maintenance or recovery of his custody incident to the punishment or correction of such a crime can be construed as the subject of such invasions, since it is voluntarily made by the State—although a mandatory duty on the custodial agency—C. S., 7442—for the protection of the people of the State at large in preserving the integrity of the penal system. The offense was against the sovereignty of the State, the penalty fixed by law—C. S., 4404—and the exactions because of it do not go to the sovereign in any proprietary capacity justifying an application of the law of torts.

The most that can be said in behalf of the plaintiff is that it is endeavoring to protect public funds given into its custody. These funds were legitimately spent for a public purpose, and there is no statute law, and certainly no common law principle, authorizing their recovery from this defendant.

In view of this disposition of the case it is not necessary to consider plaintiff's appeal or questions concerning the residence of the defendant.

The judgment of the court below is reversed. The defendant will be placed, as far as possible, *in statu quo* at the beginning of this suit, respecting, however, the agreements of counsel with regard to the sale and its proceeds.

Reversed.

CLARKSON, J., took no part in the consideration or decision of this case.