249 So.2d 328 (1971)
STATE of Louisiana
v.
TIME, INC.
No. 8365.
Court of Appeal of Louisiana, First Circuit.
May 31, 1971.
Rehearing Denied June 30, 1971.
Jack P. F. Gremillion, Atty. Gen., Victor Sachse & Frank P. Simoneaux of Breazeale, Sachse & Wilson, Baton Rouge, Thomas W. Leigh, Monroe, Charles J. Rivet, New Orleans, for appellant.
Cicero C. Sessions, Robert E. Winn, Robert E. Barkley, Jr., of Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, Harold R. Medina, Jr. of Cravath, Swaine & Moore, New York City, Hundley & Peloquin, Washington, D. C., for appellee.
Before LANDRY, ELLIS and BLANCHE, JJ.
BLANCHE, Judge.
Plaintiff, State of Louisiana, instituted this suit to recover damages for alleged defamation resulting from the publication by defendant, Time, Inc., of an article appearing in the April 10, 1970, issue of "Life" Magazine. Plaintiff alleged that the statements made in the aforementioned article defamed plaintiff, were not true, and were made by defendant with actual knowledge of their falsity or with reckless disregard as to their truth or falsity and with actual malice. Plaintiff alleged that it had "a right and duty to bring this action on its own account and for account of its citizens because of the injury inflicted by this malicious publication." (Petition, paragraph 32) To this petition defendant filed a peremptory exception of no cause of action and no right of action.[1] The matter was argued, briefed and taken under advisement by the trial court, and in due course the trial court rendered judgment sustaining the peremptory exception of no cause of action and no right of action. From this judgment plaintiff perfected this devolutive appeal. For the reasons hereinafter set forth, we affirm the judgment of the trial court.
*329 This appeal presents two essential issues for resolution: (1) whether plaintiff itself has a cause of action for defamation; and (2) whether plaintiff has a cause of action for defamation which it can bring on behalf of its citizens.
Plaintiff argues that Louisiana constitutional[2] and statutory[3] law gives plaintiff a cause of action against defendant for defamation.
We feel the trial court adequately disposed of this contention in Written Reasons for Judgment, from which we quote approvingly as follows:
"With respect to the above quoted law [see footnotes 2 and 3], plaintiff argues as follows: A cause of action for defamation is available in Louisiana to `persons.' The State of Louisiana is a corporation; a corporation is an artificial person, and therefore, the State of Louisiana may maintain an action for defamation.
"Accepting, arguendo, that the State of Louisiana is a corporation and can, in certain instances, be called a person, see 81 C.J.S., States, Sec. 213, 49 Am.Jur., States, Territories and Dependencies, Sec. 80, and State of Ohio v. Helvering, 292 U.S. 360, 54 S.Ct. 725 [, 78 L.Ed. 1307,] (1934), the Court cannot accord with plaintiff's conclusion that the state is a person for purposes of the law of defamation and libel. It is the opinion of this Court that a state constitutes a concept or idea, `a sort of intangible sovereignity [sic] (which) legally speaking * * * cannot be assaulted, slandered, or injured as can an individual with respect to a personality which it does not possess. [`] State Highway and Public Works Commissioner v. Cobb, 215 N.C. 556, 2 S.E.2d 565 (1939). Under the American philosophy of government, the state is a creature of the people and does not exist separate and apart from the people. The `state' is simply the name given to a governmental system designed to maintain an ordered freedom, and this system is not considered distinct from or superior to the people. To accept the argument that the state is capable of being defamed would be to reject the basic American principle that the people are the supreme sovereign and to replace it with the antithetical concept that the state is supreme and exists apart from and independently of the people. As long as ultimate sovereignity [sic] resides in the people, the state cannot be thought of as having a separate personality and, therefore, cannot be said to have been defamed.
"The limited jurisprudence in this area is clear to the effect that a government, such as the State of Louisiana, may not maintain a civil action for libel. In the case of City of Chicago vs. Tribune Co., 307 Ill. 595, 139 N.E. 86 (1923), the City of Chicago brought a libel action against a newspaper publishing company claiming that certain articles which appeared in the newspaper were false and defamatory. The court therein sustained the defendant's demurrer saying, in part:
`The fundamental right of freedom of speech is involved in this litigation, and not merely the right of liberty of the press. If this action can be maintained against a newspaper it can be maintained against every private citizen who are [sic] ventures to criticize the ministers who [are] temporarily conducting the affairs of his government. Where any person by speech or writing seeks to persuade *330 others to violate existing law or to overthrow by force [or other lawful means] the existing government, he may be punished (citations omitted), but all other utterances or publications against the government must be considered absolutely privileged.'
"Later in its opinion, the court in City of Chicago stated:
`* * * it [It] follows[,] therefore[,] that every citizen has a right to criticize an inefficient or corrupt government without fear of civil as well as criminal prosecution.'
"The court concluded by remarking:
`[* * *] This action is out of tune with the American spirit, and has no place in American jurisprudence.'
"In the case of City of Albany v. Meyer, 99 Cal.App. 651, 279 Pac. 213 (1929), the City of Albany sued for libel claiming damages to its good name, reputation and credit. In sustaining defendant's demurrer, the Court cited City of Chicago, supra, with approval and made this relevant comment at p. 215:
`* * * the old common-law right of the government to punish or sue for libel which prevailed in the days of the divine right of kings on the theory that the king could do no wrong is fundamentally out of harmony with the whole American system of government, which is based upon the theory that the people are sovereign, that its magistrates, as servants of the people can do wrong, and that the people have the fundamental right to criticise [sic] them and expose their inefficiency [sic] and corruption.'
"Similarly, a park district (Progress Development Corporation v. Mitchell, 219 F. Supp. 156 (N.D.Ill.1963) and a school board (Board of Education of Miami Trace Local School District v. Marting, 7 Ohio Misc. 64, 217 N.E.2d 712 (1966) were held unable to maintain actions in libel and malicious prosecution respectively.
"The State of Louisian [sic] relies, in part, on the case of Toledo Newspaper Co. v. United States, 247 U.S. 402, 38 S.Ct. 560 [, 62 L.Ed. 1186] (1918), where a newspaper was held in contempt of court because of comments it made on a case pending in federal court. In addition to being factually distinguishable from the case at bar, the Toledo case, according to the U. S. Supreme Court, `proved aberrational and was overruled in Nye v. United States, 313 U.S. 33, 47-52, 61 S.Ct. 810[,] 815-817 [, 85 L.Ed. 1172] [ * * * ] (1942) [sic].' Bloom v. Illinois, 391 U.S. 194, 206, 88 S. Ct. 1477, 1484 [, 20 L.Ed.2d 522] (1968).
"Next, the State of Louisiana cites Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534 [, 17 L.Ed.2d 456] (1967), New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710 [, 11 L.Ed.2d 686] (1964) and Carrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209 [, 13 L.Ed.2d 125] (1964), all for the proposition that a calculated falsehood does not enjoy constitutional protection. However, it is felt that these cases are inapposite to the case at bar. In Sullivan and Garrison, the Supreme Court held that a calculated falsehood with respect to a public official in his official conduct was not constitutionally protected. In Hill, the Supreme Court applied the Sullivan test (which denies protection if a statement is knowingly false or made with reckless disregard of its truth) to an individual who sought damages under a New York statute providing a cause of action to a person whose name or picture is used by another without consent for purposes of trade or advertising. In none of these cases does the Supreme Court disturb the principle that a government is not vested with a cause of action for libel. Indeed, in New York Times v. Sullivan, cited above, the Court quoted extensively from City of Chicago v. Tribune Co., cited above, saying in particular at page 291 of Sullivan:
`"For good reason, `no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the *331 American system of jurisprudence,' City of Chicago v. Tribune Co., 307 1ll. 595, 139 N.E. 86,88 (1923).'"
"Defendant admits, for the purposes of the exception of no cause of action, that its charges were false and malicious. But, legally, falsity of the accusation, when its reference is to government, is not an abuse of free speech. Cf. New York Times v. Sullivan and City of Albany v. Meyer, cited above. Freedom to criticize the local, state and national governments is an American's birthright. As, James Madison said:
`Some degree of abuse is inseparable from the proper use of everything, and in no instance is this more true than in that of the press. It has accordingly been decided by the states that it is better to leave a few of its noxious branches to their luxuriant growth than by pruning them away to injure the vigor of those yielding the proper fruits.' 4 Elliot's Debates on the Federal Constitution, 571.
"Thus, even though the charges made by defendant are, for the purposes of this exception, false and malicious, the state cannot be heard to complain. The state, under our system, is simply a government composed of temporary representatives of the sovereign people, and is not vested with a cause of action for defamation." (Written Reasons for Judgment, Record, pp. 70-A through 73)
Appellant argues that the case of City of Chicago v. Tribune Co., 307 Illx. 595, 139 N.E. 86 (1923), has received critical comment in treatises and certain Law Review articles, and should not be adhered to by this Court. Despite the alleged referred-to criticism, we note that no American court which has dealt with the question of whether a government, be it state or local, has a cause of action for defamation, has reached a result contrary to that of City of Chicago v. Tribune Co.
We are satisfied that the result reached in the City of Chicago case and the rationale thereof are sound and in harmony with the American republican form of government embodied in and guaranteed by the United States Constitution.
The following excerpts from the opinion of the Illinois Supreme Court in City of Chicago are pertinent in this regard:
"There were few prosecutions for libel on government in the American colonies, and no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence. The right of the government to prosecute its accusers was founded on the theory that the king could do no wrong. He was an hereditary monarch and was not responsible to the people. When the people became sovereign, as they did when our government was established under our Constitution and the ministers became servants of the people, the right to discuss government followed as a natural sequence. When the sovereign power is vested in an hereditary monarch there is no occasion for discussing the government and exposing its inefficiency or corruption unless to advocate reformation by violence, because there can be no remedy except by revolution. It appears, therefore, that there was reasonable foundation for prosecuting the government's critics in the days of `divine rights' of kings, but, since the people are sovereign, and since the magistrates are servants of the people, the magistrates can do wrong, and the people have a fundamental right to criticize them and to expose their inefficiency and corruption so that they may be displaced. It is one of the fundamental principles, therefore, of the American system of government, that the people have the right to discuss their government without fear of being called to account in the courts for their expressions of opinion. * * *
"The fundamental right of freedom of speech is involved in this litigation, and not merely the right of liberty of the *332 press. If this action can be maintained against a newspaper it can be maintained against every private citizen who ventures to criticize the ministers who are temporarily conducting the affairs of his government. Where any person by speech or writing seeks to persuade others to violate existing law or to overthrow by force or other unlawful means the existing government, he may be punished (People v. Lloyd, 304 Ill. 23, 136 N.E. 505; Gilbert v. Minnesota, 254 U. S. 325, 41 Sup.Ct. 125, 65 L.Ed. 287), but all other utterances or publications against the government must be considered absolutely privileged.
"While in the early history of the struggle for freedom of speech the restrictions were enforced by criminal prosecutions, it is clear that a civil action is as great, if not a greater, restriction than a criminal prosecution. If the right to criticize the government is a privilege which, with the exceptions above enumerated, cannot be restricted, then all civil as well as criminal actions are forbidden. * * *
"* * * It follows, therefore, that every citizen has a right to criticize an inefficient or corrupt government without fear of civil as well as criminal prosecution. This absolute privilege is founded on the principle that it is advantageous for the public interest that the citizen should not be in any way fettered in his statements, and where the public service or due administration of justice is involved he shall have the right to speak his mind freely.
"The government consists of associated persons representing the sovereign, who make, interpret, and enforce the laws. The American system of government is founded upon the fundamental principle that the citizen is the fountain of all authority. Under our system this sovereign citizen has conferred certain authority upon his servantsofficers of the law commissioned for a fixed time to discharge specific duties. In order to serve their needs the citizens of Illinois, acting through the state government erected by them, have authorized the organization of city governments. The persons living within the corporate limits of these cities select officers who constitute the city government. The activities of these governments are limited by the needs of the people. All organized governments own and operate more or less property, and certain proprietary rights have long been recognized as necessary for the welfare of the inhabitants of the municipality. Municipal corporations, however, exist primarily for governmental purposes, and they are permitted to enter the commercial field solely for the purpose of subserving the interests of the public which they represent. A city is no less a government because it owns and operates its own water system, its own gas and electric system, and its own transportation system. * * *
"While for certain limited purposes it is often said that a municipality owns and operates its public utilities in its capacity as a private corporation and not in the exercise of its powers of local sovereignty, yet because of its proprietary rights it does not lose its governmental character. * * * It is manifest that, the more so-called private property the people permit their governments to own and operate, the more important is the right to freely criticize the administration of the government. As the amount of property owned by the city and the amount of public business to be transacted by the city increase, so does the opportunity for inefficient and corrupt government increase, and the greater will be the efforts of the administration to remain in control of such a political prize. The richer the city the greater the incentive to stifle opposition. In so far as the question before us is concerned, no distinction can be made with respect to the proprietary and governmental capacities of a city.

*333 "By its demurrer appellee admits it published malicious and false statements regarding the city of Chicago with intent to destroy its credit and financial standing; and, assuming that there was a temporary damage to the city, and a resultant increase in taxes, it is better than an occasional individual or newspaper that is so perverted in judgment and so misguided in his or its civic duty should go free than that all of the citizens should be put in jeopardy of imprisonment or economic subjugation if they venture to criticize an inefficient or corrupt government. We do not pass upon the truth or falsity of the publications nor the merits of the political controversy between the parties. We consider the question solely from the standpoint of public policy and fundamental principles of government. For the same reason that members of the Legislature, judges of the courts, and other persons engaged in certain fields of the public service or in the administration of justice are absolutely immune from actions, civil or criminal, for libel for words published in the discharge of such public duties, the individual citizen must be given a like privilege when he is acting in his sovereign capacity. This action is out of tune with the American spirit, and has no place in American jurisprudence." (City of Chicago v. Tribune Co., 139 N.E. at 88, 90, 91)
With regard to the second issue, i. e., whether the State can bring a cause of action on behalf of its citizens for alleged defamation under the doctrine of parens patriae, we are satisfied the trial court likewise properly disposed of this contention by the following Written Reasons for Judgment:
"The state, as guardian of the people or parens patriae, also seeks damages for an alleged libel of all the citizens of Louisiana. A state, as parens patriae, is empowered to bring certain types of actions on behalf of all the people. However, one important criterion must be met in order for a state to sue in its capacity as parens patriae. It was well stated by the court in State of Hawaii v. Standard Oil of Cal., 301 F.Supp. 982 (D.Hawaii 1969):
`An analysis of the above cases indicates that if a state is to maintain an action in its parens patriae capacity, initially the facts must show that the state has an interest "independent of and behind the titles of its citizens," Georgia v. Tennessee Copper Co., supra; [206 U.S. 230,27 S.Ct. 618, 620, 51 L.Ed. 1038] "has an interest apart from that of the individuals affected," Pennsylvania v. West Virginia, supra; [262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117] "must show a direct interest of its own and not merely seek recovery for the benefit of individuals who are the real parties in interest," Oklahoma v. Cook, supra; [304 U.S. 387, 58 S.Ct. 954, 82 L.Ed. 1416] "[it] must appear that the controversy to be determined is * * * not a controversy in the vindication of grievances of particular individuals," Louisiana v. Texas, supra [176 U.S. 1, 20 S.Ct. 251, 44 L. Ed. 347]. Thus the state's parens patriae claim cannot be a disguised attempt to recover damages on behalf of the state's individual citizen-claimants.'
"It is the opinion of this Court that since a state cannot be libeled, the State of Louisiana has no separate interest apart from that of the individuals affected. Because the state herein cannot show a direct and independent interest of its ownfor it has none-the Court holds that the State of Louisiana has no cause of action on behalf of all of its citizens in its capacity as parens patriae.

"Plaintiff cites State of Georgia v. Pennsylvania R. Co., 324 U.S. 439, 65 S. Ct. 716 [, 89 L.Ed. 1051] (1945) as authority for its claim as parens patriae. It is recognized that in the above case, the State of Georgia was permitted to bring suit in its capacity as parens patriae. *334 However, the situation therein was quite different from the situation presented in the instant case. In State of Georgia, the claims asserted were violations of the antitrust laws and the state was allowed to maintain the action as parens partriae [sic] because a state is designated by Congress to be a `person' for the purposes of the Clayton Act, and was thereby vested with a cause of action for violations of the antitrust laws. The State of Georgia case does not alter, but rather re-affirms the principle that a state does not have a cause of action as parens patriae when no rights of the state have been violated.
"Moreover, the Court points out the well settled rule that there arises no cause of action for defamation in favor of any of the members of a group or class when the allegations complained of do not single out a particular person or persons. This settled rule finds expression in Louisiana in the case of McGee v. Collins, 156 La. 291, 100 So. 430 (1924), which held that an insurance agent could not maintain an action for defamation as a result of a publication which applied to insurance agents as a class and which did not name the plaintiff. There, our Supreme Court said:
`Where defamatory words reflect upon a class of persons impartially, and there is nothing to show which one is meant, no action lies at the suit of any member of the class.'
"It follows from the foregoing language that only those persons specifically named by the Life article are vested with a cause of action for defamation. The State of Louisiana, however, may not maintain this suit on behalf of all its citizens.
"This court is certainly not unaware of the continuous intense political controversy surrounding this case and the April 10 article of Life Magazine. This decision, while it denies to the State of Louisiana the right to bring suit, does not affect in any way the individuals mentioned in said article. These individuals may bring a cause of action and if they do a factual decision can be judicially made as to whether or not calculated falsehood was told by defendant in its April 10 article." (Written Reasons for Judgment, Record, pp. 74 through 76)
For the foregoing reasons, the judgment appealed from is affirmed, appellant to pay all costs of these proceedings with which it may be legally assessed.
Affirmed.
NOTES
[1] Defendant also filed a motion for a summary judgment and motion for judgment on the pleadings, which motions were not passed upon by the trial court in view of its disposition of the peremptory exception.
[2] Plaintiff relies on Louisiana Constitution Article 1, Section 6, which provides the following:

"All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay."
[3] Plaintiff relies on Louisiana Civil Code Article 2315, which in pertinent part provides the following:

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. * * *"