The CITY OF PHILADELPHIA, on its own behalf, on behalf of the officers and men of the Philadelphia Police Department and on behalf of the citizens of the City of Philadelphia, Plaintiff,

v.

The WASHINGTON POST COMPANY, Defendant.

Civ. A. No. 79–3050.

United States District Court, E. D. Pennsylvania.

Dec. 5, 1979.

Sheldon L. Albert, Law Dept., City of Philadelphia, Philadelphia, for plaintiff.

Oliver C. Biddle, Helen P. Pudlin, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, John B. Kuhns, Kevin T. Baine, Washington, D. C., for defendant.

## MEMORANDUM

FULLAM, District Judge.

On August 13, 1979, the United States Department of Justice filed a lawsuit in this district, charging the City of Philadelphia, its Mayor, and various police officials with violating the constitutional rights of its citizens by pursuing policies of police abuse and brutality. The following day, the defendant published, in its "Washington Post" newspaper, an account of the lawsuit and the alleged background events leading up to the filing of the lawsuit.

The plaintiff, the City of Philadelphia, has now filed this action for libel, "on its own behalf, on behalf of the officers and men of the Philadelphia Police Department and on behalf of the citizens of the City of Philadelphia." The City complains about the following statements contained in the "Washington Post" article:

"On a cool, damp spring night two years ago, more than 20 Philadelphians watched in stunned disbelief as 10 policemen beat a black man, breaking nightsticks on his head and shoulders, after he had run a stop sign.

. . . . .

"Seven months later, six Philadelphia homicide detectives were convicted in an unrelated case in federal court for beating and intimidating eight people . .

"Nor was Mayor Rizzo's reaction to the suit a surprise. Asked about the extent of police brutality in the city, Rizzo said: 'I've never seen any.'

. . . .

". . . the indictment and arrest of more than 30 Philadelphia policemen by state and federal authorities.

". . . police department statistics show that more than 150 civilians have been killed by policemen. In more than half those cases, the civilians were unarmed when they were beaten or shot.

"In none of those cases were the policemen suspended or disciplined publicly

. . . .

"A typical shooting case is being heard in a Philadelphia court this week.

. . . . .

". . . There, Bowe shot Warren in the head.

". . . The defendant remains on active duty as he sits in the courtroom each day."

The City charges that these statements were published "with the sole purpose of falsely and maliciously portraying an official policy of police oppression reaching every encounter with a Philadelphia policeman" (¶ 9 of the Complaint); that as a result of the publication of the article, the City, its police force, and its citizenry "have been brought into disgrace, disrepute and humiliation;" and that the public generally has been misled into believing that Philadelphia is an unsuitable place to live, and an unsafe place to visit. Plaintiff seeks $10 million in compensatory damages and an additional $10 million in punitive damages.

Not surprisingly, the defendant has filed a Motion to Dismiss. The Motion must, for rather obvious reasons, be granted.

The City cannot maintain an action for libel on its own behalf. A governmental entity is incapable of being libeled. *The Mayor, Aldermen and Citizens of Man-*

chester v. Williams, 1 Q.B. 94 (1891) (such an action is "altogether unprecedented" and "there is no principle on which it could be founded" (*Id.* at p. 96)). More fundamentally, to permit such a lawsuit to be maintained, either on behalf of the City itself, the citizens of the City, or officials or employees of the City, would plainly violate the First Amendment of the United States Constitution.

In *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Court stated:

"For good reason, 'no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence.' *City of Chicago v. Tribune Co.*, 307 Ill. 595, 601, 139 N.E. 86, 88, 28 A.L.R. 1368 (1923). The present proposition would sidestep this obstacle by transmuting criticism of government, however impersonal it may seem on its face, into personal criticism, and hence potential libel, of the officials of whom the government is composed . . . We hold that such a proposition may not constitutionally be utilized to establish that an otherwise impersonal attack on governmental operations was a libel of an official responsible for those operations. . . ." (At p. 291, 84 S.Ct. at p. 732.)

In *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), the Court emphatically reiterated the same views, referring to "the spectre of prosecutions for libel on government, which the Constitution does not tolerate in any form." 383 U.S. at 81, 86 S.Ct. at 673.

The numerous lower court decisions to the same effect are marshalled and discussed in the annotation, "Right of Governmental Entity to Maintain Action for Defamation," 45 A.L.R.3d 1315.

Counsel for plaintiff have attempted to distinguish *New York Times v. Sullivan* and *Rosenblatt v. Baer, supra*, as follows:

"The cases certainly do not stand for the proposition that the non-actionability attached to libel of government may be extended to include libel of those who comprise government merely because they are criticized in their official capacity. Even less do these decisions provide any basis for suggesting that the non-actionability of libel of government may be extended to make libel of the citizenry nonactionable simply because the citizenry elects the government and is ultimately sovereign over it. Both cases deal with ramifications of the fact that government action, regardless of any theories about intangible sovereignty, is really the action of individual officeholders. The decisions have no application to suits on behalf of those who hold no similar power . . . ." (Plaintiff's Memorandum, p. 7.)

As I understand it, plaintiff is arguing that a court which would not permit a high government official to maintain a libel action on the theory that what appeared to be a libel against the Government was a libel against him because he was responsible for the policies criticized (expressly basing its decision upon abhorrence, on constitutional grounds, of anything resembling a claim for defamation of the Government) would nevertheless permit the Government itself to maintain a libel action, by claiming that the persons whose actions are criticized are not policy-makers. In my judgment, the attempted distinction demonstrates that the present case is a stronger one for dismissal than either *New York Times* or *Rosenblatt*. If the claim is that identifiable individuals have been libeled, the City is plainly the wrong plaintiff. And any other kind of claim by the City is obviously barred by the First Amendment and the holdings in *New York Times* and *Rosenblatt*.

I therefore find equally unpersuasive plaintiff's attempts to justify this action on a *"parens patriae"* theory. Indeed, the only authority cited by either side on this precise issue, *State of Louisiana v. Time, Inc.*, 249 So.2d 328, 45 A.L.R.3d 1304 (La. App.1971), is squarely contrary to plaintiff's position.

This action will be dismissed with prejudice.