**EDGARTOWN POLICE PATROLMEN'S ASSOCIATION and Bruce Pratt, Plaintiffs,**

v.

**Virginia C. JOHNSON, Defendant.**

**Civ. A. No. 81–197–C.**

United States District Court, D. Massachusetts.

Sept. 29, 1981.

Gerald M. Saxe, Falmouth, Mass., for plaintiffs.

Bingham, Dana & Gould, James F. McHugh, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is an action for defamation brought by Bruce Pratt ("Pratt"), Chief of the Edgartown, Massachusetts Police Department, and by the Edgartown Police Patrolmen's Association ("E.P.P.A."), an unincorporated association which is made up of full-time Edgartown police officers, against Virginia C. Johnson ("Mrs. Johnson"), a long-time summer resident of Edgartown, whose legal domicile is in the state of New York.

The plaintiffs' complaint has two counts. The first count alleges that an October 4, 1980 letter sent by Mrs. Johnson to the *Vineyard Gazette*, an Edgartown newspaper, and to the Board of Selectmen was "false and defamatory." The second count alleges that a package of materials sent on October 30, 1980 by Mrs. Johnson to the Board of Selectmen was also "false and defamatory." The defendant denies both the counts and raises several affirmative defenses. Jurisdiction is based on diversity of citizenship; the plaintiffs have alleged $1,000,000 as damages.

The defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56. The motion is based on the pleadings, answers to interrogatories, admissions of fact, several exhibits and the affidavit of the defendant, Mrs. Johnson. The plaintiffs have opposed the motion and submitted one counter-affidavit. Oral argument was heard by the Court and both sides submitted briefs. After reviewing the entire record, I rule that the defendant's motion for summary judgment should be allowed.

The defendant's summer home is on North Water Street in Edgartown, Martha's Vineyard. During recent years Edgartown has been the scenic backdrop for two motion pictures and at least one television commercial. In order to produce these films, professional production crews spend lengthy periods of time in and around Edgartown. On September 26, 1980, a television film crew was filming a television commercial along North Water Street in front of Mrs. Johnson's home. After observing the film crew committing what she believed to be parking and zoning violations, Mrs. Johnson complained to the Edgartown Police Department. She alleges that there was no response to her complaint and that the situation in front of her house did not improve.

As a result of what she perceived as a failure to respond, the defendant wrote a five-paragraph letter to the *Vineyard Gazette* and to the Board of Selectmen. The letter was published in the October 4, 1980 edition of the newspaper. It reads as follows:

"I would like to pinpoint your attention to a very serious situation.

The constant arrival of motion picture companies and television news and commercial enterprises into the town of Edgartown is a cancer that only you can contain and, if possible, halt. The ensuing corruption of the police force has been witnessed here and is not a threat but a hard fact which you as responsible elected officials must face squarely.

Edgartown has become a cheap backdrop of the clever commercial outfits who know a pushover when they see one. Why else do they come all this distance when the Mainland also has seaports and old homes?

These companies own nothing here. They pay no taxes, contribute nothing to the hospital, preservation, conservation, library, community services, art center, or Island skating rink. In some mainland locales they are required to put up a very large fee to compensate for their stopping traffic, confusion, noise and in-

vasion of privacy. This really slows them down.

Please wake up to a very bad situation. Is it already too late? Never!

Mrs. N.D. Johnson
Edgartown

This letter forms the basis of count one of the plaintiff's complaint.

In an October 14, 1980 letter, the Board of Selectmen, acting in its official capacity, requested that Mrs. Johnson provide facts to substantiate her allegations of corruption in the police department. On October 30, 1980, the defendant presented the selectmen with a package of materials which included 1) a series of photographs taken by Mrs. Johnson of the film crew working outside her house on September 26, 1980; 2) a 1975 news clipping concerning, in part, problems within the police department in the wake of filming the movie "Jaws" in Edgartown in 1974; 3) a dictionary definition of the word corrupt; and 4) assorted articles concerning the problems in small resort communities with commercial activities and large public gatherings. Finally, the package contained a copy of the October 4 letter together with a picture, which appeared in the *Vineyard Gazette* a week later, of a film crew working on South Main Street in Edgartown. This package of material forms the basis of count two of the plaintiffs' complaint.

In a defamation action where First Amendment principles are involved, summary judgment is often an appropriate procedure for resolving the case. This is particularly true where a private citizen has been sued by a public official.

In the First Amendment area, summary procedures are ... essential. For the stake here, if harassment succeeds, is free debate. One of the purposes of the [*New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)] principle, in addition to protecting persons from being cast in damages in libel suits filed by public officials, is to prevent persons from being discouraged in the full and free exercise of their First Amendment rights with respect to the conduct

of their government. The threat of being put to the defense of a lawsuit brought by a popular public official may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself. *Washington Post v. Keogh*, 365 F.2d 965, 968 (D.C.Cir.1966) *cert. den.*, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967). On the record before this Court, the present action is susceptible to resolution by means of summary judgment.

The plaintiffs in this case are the Edgartown Chief of Police and the E.P.P.A. In her motion for summary judgment, the defendant has raised compelling arguments attacking the right of the plaintiffs to maintain this case. In essence, the defendant argues that both plaintiffs are no more than formal parties substituted for the real party, the Edgartown Police Department. Since governmental bodies such as a police force may not be libeled, the defendant asserts that this action must be dismissed. In response, the plaintiffs argue that the charge of corruption by its nature implicates individuals. As such, even a vague, general allegation of corruption becomes an assault on each individual member of the police force. Such convoluted reasoning fails to answer the defendant's arguments. Further the plaintiffs have not produced any evidence to support their contention that Mrs. Johnson's charges—regardless of their truth or falsity—were understood by the public to apply to individuals on the police force.

█ It is well-established that a governmental body may not sue for libel. *See New York Times v. Sullivan, supra; City of Philadelphia v. Washington Post Company*, 482 F.Supp. 897, 898–99 (E.D.Pa.1979); *City of Chicago v. Tribune Co.*, 307 Ill. 595, 606–610, 139 N.E. 86 (1923); *see also* Annot. *Right of Governmental Entity to Maintain Action For Defamation*, 45 A.L.R.3d 1315 (1973). Public debate must not be inhibited by the threat that one who speaks out on social or political issues may be sued by the very governmental authority which he criticizes. *New York Times v. Sullivan, supra*, 376 U.S. at 292, 84 S.Ct. at 732.

"Unless persons, . . . desiring to exercise their First Amendment rights are assured freedom from the harassment of lawsuits, they will tend to become self-censors. And to this extent debate on public issues and the conduct of public officials will become less uninhibited, less robust, and less wide-open for self-censorship affecting the whole public is 'hardly less virulent for being privately administered.'"

*Washington Post v. Keogh, supra* at 968.

█ In the present case, the plaintiffs are the police chief and an association of individual police officers of the Edgartown police department. As such, the plaintiffs argue that they are not a governmental body but, rather, the individuals who make up that body. This argument was specifically and forcefully rejected by the Court in *New York Times v. Sullivan, supra* at 291–292, 84 S.Ct. at 732–733. In *New York Times*, the plaintiff, a city commissioner, argued that unspecified criticism of the police force was understood by the public to refer to him specifically. Thus, the plaintiff asserted, an advertisement which spoke only generally of the "police force" or "police power" was clearly understood to apply individually to the city commissioner. Further, there was extensive testimony at trial from local citizens that they associated the statements contained in the advertisement with the city commissioner. *Id.* at 288, 84 S.Ct. at 730. Refusing to accept the reasoning of this argument, the Court in *New York Times* forcefully stated:

"The present proposition would sidestep this obstacle by transmuting criticism of government, however impersonal it may seem on its face, into personal criticism, and hence potential libel, of the officials of whom the government is composed . . . . Raising as it does the possibility that a good-faith critic of government will be penalized for his criticism, the proposition relied on . . . strikes at the very center of the constitutionally protected area of free expression. We hold that such a proposition may not constitutionally be utilized to establish that an

otherwise impersonal attack on governmental operations was a libel of an official responsible for those operations. Since it was relied on exclusively here, and there was no other evidence to connect the statements with respondent, the evidence was constitutionally insufficient to support a finding that the statements referred to respondent.

*Id.* at p. 292, 84 S.Ct. at p. 733.

The present case is clearly governed by the holding in *New York Times.* None of the defendant's statements identified or singled-out any member of the police force. Chief Pratt is not mentioned by name in any statement made by Mrs. Johnson. Further, the plaintiffs have failed to submit any evidence to support their bald assertions that the statements published in the *Vineyard Gazette* were ever associated with them individually. In the most conclusory terms, the plaintiffs ask this Court to accept the argument that a broad characterization of the police department as corrupt was a "direct assault" upon the individual members of the police force.

 I rule that the plaintiffs in this case have attempted to transform impersonal criticism of the Edgartown Police Department into personal insult. Their claims are clearly proscribed by the United States Supreme Court decision in *New York Times.* Public authorities must not be permitted to stifle commentary concerning their conduct by simply substituting individuals as plaintiffs in a defamation action. Regardless of the truth or falsity of the defendant's statements on either of the two occasions when she accused the police of corrupt activities, the defendant's motion for summary judgment must be allowed and the plaintiffs' two claims must be dismissed.

While this decision precludes any further inquiry into the merits of the plaintiffs' claims, it should be noted that the statements alleged to be defamatory are but the vaguest of generalizations. See *National Ass'n of Government Employees v. Central Broadcasting Corp.*, 379 Mass. 220, 396 N.E.2d 996 (1979). The plaintiffs, submitting only one counter-affidavit, have utterly failed to show that they ". . . can produce the requisite quantum of evidence to enable (them) to reach a jury with (their) claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir., 1975), *cert. den.*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). Particularly, there is nothing whatsoever in the record which would warrant a jury in finding that the defendant's statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times v. Sullivan, supra* 376 U.S., at 280, 84 S.Ct. at 726; *see also Nader v. de Toledano*, 408 A.2d 31 (Ct.App.D.C., 1979).

Order accordingly.