**Lucy Eleanor BRADY, Plaintiff,**

v.

**The HEARST CORPORATION et al.,**
**Defendants.**

**Civ. A. No. 66–888.**

United States District Court
D. Massachusetts.

March 21, 1968.

---

Gerald May, of Rich, May & Bilodeau Boston, Mass., for The Hearst Corp., Harold G. Kern, and C. Edward Holland.

Monroe Inker, Crane, Inker & Oteri, Boston, Mass., for Robert Court.

John E. Sherman, Brookline, Mass., for plaintiff.

## OPINION

CAFFREY, District Judge.

This matter came before the Court on motions, filed by all defendants, for summary judgment and also for dismissal pursuant to Rule 37, Federal Rules of Civil Procedure, because of plaintiff's failure to comply with an order of the court for pretrial discovery. Affidavits in support of the motions for summary judgment were filed by defendants C. Edward Holland and Bob Court. Counter-affidavits were filed by plaintiff.

This is an action of tort for libel, filed in this court on the basis of diversity jurisdiction. The complaint contains three counts. Count One recites:

"1. That on December 20, 1965, the defendants portrayed the plaintiff by malicious defamation in writing published by the Record American as guilty of serious crimes.

2. That the crimes portrayed were by the defendants said to be committed across several state lines and the international border of the United States and the Dominion of Canada.

3. That the crimes are indictable offenses which could result in the disbarment of the plaintiff from the practice of law, imprisonment and rejection by her profession and society in general.

Wherefore, the plaintiff demands damages against the defendants, jointly and severally, on this count in the sum of $250,000."

Count Two re-alleges Count One and adds the following:

"The defendants invaded the privacy of the plaintiff's place of employment on the same December 20, 1965 by telephone, several hours after the Record American had been circulated on the streets of Boston and elsewhere and transported through the mails, to ascertain the whereabouts of the plaintiff.

Wherefore, etc."

Count Three re-alleges Counts One and Two, and adds the following:

"2. Publication of the libel was the culmination of a series of harassments by the defendants, including the invasion of the privacy of a sick room by masquerading as a doctor.

3. By the larcenous taking of the contents of a private communication from the plaintiff to her attorney and the publication of a deliberate and malicious distortion of its contents and purpose, all without the knowledge or consent of the plaintiff.

4. By the invasion of the privacy of the plaintiff's place of employment by telephone to the plaintiff and by masquerading as a lawyer in her lawyer's office to obtain from the plaintiff private information.

5. The harassment of the defendants has forced the plaintiff to move her place of residence four times and to four different states at great expense and injury to her health.

6. That the tortious acts of the defendants have caused the plaintiff great mental and physical suffering, loss of health and employment opportunities.

Wherefore, etc."

The following facts may be taken as true for purposes of these motions: Plaintiff Lucy Eleanor Brady is now and was at the time of filing of the complaint a resident of the State of New Jersey. She is an attorney, admitted to practice in Massachusetts, employed by Prentice-Hall, Inc., Englewood Cliffs, New Jersey, and she is the wife of George Lewis Brady, a Massachusetts resident who is and since 1963 has been under indictment in Suffolk Superior Court, Commonwealth of Massachusetts, for larceny in connection with the construction of the so-called Boston Common Underground Garage. Mr. Brady has been in a fugitive status from the courts of the Commonwealth since some time in 1963 and both state warrants and a federal fugitive warrant are outstanding for his arrest.

In the course of pretrial discovery, plaintiff has conceded that the only arti-

cle claimed to be libelous is that of December 20, 1965. This article in pertinent part states:

(Headline on page 1) "MISSING BRADY SEEN ON TRAIN."

"George Lewis Brady, wanted for more than two years for larceny of $784,468 in the Boston Common Underground Garage scandal, was a furtive passenger on the Santa Fe Railroad's crack San Francisco Chief nine days ago, a Greater Boston couple reported yesterday. They quoted the man they identified as the long-sought Brady as saying he was living on the outskirts of Fresno, Cal., and was en route to Montreal for a Christmas reunion in an hotel with members of his family. The information they gave concerning the eccentric suspect, who has been a fugitive from justice since October 24, 1963, has been turned over to State Police. The couple quoted the man they believed to be Brady as telling them he planned to celebrate both Christmas and his 60th birthday in Montreal and return to Fresno on December 28. * * * He then explained to the couple that he was meeting his family in Montreal instead of in the Eastern United States where they live because, 'There had been an upset in my life and I don't want anybody to get hurt. That's the way we do it.' * * * He could have made connections for Montreal at Chicago. Brady is wanted here on both state and federal warrants. The federal warrant charges him with unlawful flight to avoid prosecution. Before the Boston Common garage scandal broke, Brady was chairman of the Massachusetts Parking Authority."

▆▆▆ The motions for summary judgment must be granted as to Count One, the alleged libel, for several reasons. The article complained of is not libelous, either in the sense that plaintiff alleges or otherwise. It does not accuse plaintiff of the commission of any criminal act cognizable under either state or federal law. "Words [of alleged libel

should] be read in a natural sense with the meaning they would convey to mankind in general." Lyman v. New England Newspaper Pub. Co., 286 Mass. 258, 260, 190 N.E. 542, 92 A.L.R. 1124 (1934). See, also Joyce v. George W. Prescott Publishing Co., 348 Mass. 790, 205 N.E.2d 207 (1965). So read, the article complained of totally fails to impute to plaintiff any conceivable crime. There is no merit in the suggestion that this article imputes or suggests in any way that plaintiff has done anything which could be construed as a violation of Mass.G.L. ch. 274, sec. 4, which reads as follows:

"Whoever, after the commission of a felony, harbors, conceals, maintains or assists the principal felon * * *, or gives such offender any other aid, knowing that he has committed a felony * * * with intent that he shall avoid or escape detention, arrest, trial or punishment shall be an accessory after the fact."

The article likewise fails to charge plaintiff with commission of a violation of either 18 U.S.C.A. sec. 3 or 18 U.S.C.A. sec. 1071. These statutes read as follows:

"18 U.S.C.A. Sec. 3,—*Accessory after the fact.* Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact."

"18. U.S.C.A. Sec. 1071,—Whoever harbors or conceals any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person shall be fined * * * or imprisoned * * *."

Reading the complained of article published in defendants' newspaper of December 20, 1965, most favorably to the

plaintiff, it says nothing which could be construed as accusing her of harboring, concealing, maintaining, assisting or aiding her husband. The most that this article reports is that a fugitive had planned a combination Christmas and birthday reunion with unnamed members of his family. The article states expressly that the fugitive arranged for the meeting this way and no conduct proscribed by the statute is expressly or impliedly charged to any member of the fugitive's family. Read in a "natural sense," the article conveys to mankind in general only that the fugitive's family, like any other normal family group, desired to spend Christmas with the head of the family.

■ Passing beyond plaintiff's narrow allegation that the article imputes to her the commission of a crime, and applying the general test used in Massachusetts to determine whether or not a libel has occurred, I rule that the published words in the article in question do not tend to injure the reputation of the plaintiff nor do they expose her to hatred, ridicule and contempt. Rawson v. Arlington Advocate, Inc., 336 Mass. 31, 142 N.E.2d 395 (1957); Muchnick v. Post Publishing Co., 332 Mass. 304, 125 N.E.2d 137, 51 A.L.R.2d 547 (1955).

It might be noted in passing that plaintiff's alleged fears that she might be disbarred or imprisoned, etc., if convicted of the indictable offense which she reads into the article, are totally groundless, since Mass.G.L., ch. 274, sec. 4, concludes with the following provision:

> "The fact that the defendant is the husband or wife * * * shall be a defence to a prosecution under this section."

Because this article fails to hold plaintiff up to ridicule and contempt, the question of whether or not it was published maliciously does not enter into the matter. Colby Haberdashers v. Bradstreet Company, 267 Mass. 166, 166 N.E. 550 (1929); Ricci v. Crowley, 333 Mass. 26, 127 N.E.2d 652 (1955).

■ A further reason why Count One must be dismissed is that the article, in any event, does not refer to Mrs. Brady by name or by any specific reference from which she can be identified as one of those persons planning to attend the Montreal reunion. Ellis v. Kimball, 33 Mass. 132 (1834). Cf. Prosser on Torts 3d Ed., 1964, sec. 106, n. 71.

■ Count Two must be dismissed for the reason that it fails to state a cause of action. Plaintiff has cited no authority and independent research has found none which makes actionable as an invasion of a claimed right of privacy a telephone call to a person at his or her place of employment. See Kelley v. Post Publishing Company, 327 Mass. 275, at p. 278, 98 N.E.2d 286, 287 (1951), where the Court observed:

> "The law does not provide a remedy for every annoyance that occurs in everyday life."

See, also, Brauer v. Globe Newspaper Co., 351 Mass. 53, 57, 217 N.E.2d 736 (1966); Wright v. RKO Radio Pictures, 55 F.Supp. 639 (D.Mass.1944). Furthermore, the unlikelihood of the existence of any cause of action would appear to be enhanced where the person called is the spouse of a public official who is under indictment and in a fugitive status because of mal-conduct allegedly performed in the course of his public employment. Cf. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

■ Count Three must be dismissed on several grounds. It consists of a complaint of alleged larceny of a letter, not from plaintiff but from the office of a lawyer to whom plaintiff addressed the letter. I rule that plaintiff has no property in this letter and that if a cause of action for the alleged larceny of the letter exists it is the lawyer's, and not plaintiff's. A second ground of dismissal is the fact that Mrs. Brady has alleged or offered nothing to indicate that the value of this letter, a copy of which is in the file of this case, could reasonably be found to be $10,000 or more, in

any event. Thirdly, the affidavit of C. Edward Holland, Editor of the defendant newspaper, stands uncontradicted on the factual statement that the first time the letter came to the attention of the Record American was when it was produced by plaintiff pursuant to an order of this Court in the course of pretrial discovery.

The plaintiff filed two documents in opposition to the allowance of the motions for summary judgment, each captioned "Affidavit of Personal Knowledge of the Plaintiff." The affidavit executed January 7 and filed herein on January 11, 1968, makes no reference to anything conceivably relevant to Count Three. The purported affidavit executed January 19 and filed herein on January 23, 1968, in the portions thereof conceivably relevant to Count Three, discloses on its face that it is not in fact based on the personal knowledge of the affiant as required by the Federal Rules of Civil Procedure. Rather, this affidavit contains a series of statements, each premised on the stated basis, "Common sense dictates that." An affidavit so premised is not a legally acceptable substitution for an affidavit based on personal knowledge of the affiant.

In Morrissey v. Procter & Gamble, 379 F.2d 675 (1967), the Court of Appeals for this Circuit indicated that great caution should be taken to assure that no issue of fact exists prior to the granting of summary judgment. The Court pointed out, at p. 677:

> "If a party has made an evidentiary showing warranting a favorable inference, contradiction cannot eliminate it. Summary judgment may not be granted where there is the 'slightest doubt as to the facts.'"

A careful examination of the entire file herein, particularly the affidavits of defendants C. Edward Holland and Bob Court, and the plaintiff Lucy Eleanor Brady, indicates that there is no issue of material fact established by the contents of the file of this case with regard to any fact issue arising under Count Three of the complaint.

It should be noted that pretrial discovery has established that the alleged invasion of privacy of a sick room, mentioned in Count Three, does not refer to any "sick room" occupied by plaintiff but rather to a hospital room occupied by her husband. This invasion of a hospital room, if it occurred, is not the basis of an action by plaintiff.

It likewise should be noted, as was pointed out in connection with Count Two of the complaint, that no cause of action is stated by the allegation repeated in Count Three, that plaintiff's privacy was invaded by telephone calls to her place of employment. The remaining allegation in Count Three, that information was obtained by someone who masqueraded over the telephone as a lawyer associated with and calling from her lawyer's office, is negated by the uncontradicted affidavits of Holland and Court and would further appear not to be the basis of a cause of action by plaintiff in any event. If anything was illegally taken from the lawyer's office any cause of action therefor would appear to be in the lawyer.

With regard to the motion by all defendants for dismissal of the action because of plaintiff's refusal to submit to orderly oral deposition, the record indicates that notices of deposition were filed requiring plaintiff to appear and submit to oral deposition on November 27, 1967, but that she refused to do so. Thereafter, when defendants moved for a dismissal because of this refusal of plaintiff to appear, this Court exercised its discretion in her favor, did not then dismiss the action, but directed that she appear on Saturday, December 9, 1967, in Boston, for her deposition. An 83-page transcript of the abortive deposition of December 9 indicates that although plaintiff is a member of the bar she insisted on acting both as lawyer and witness at the deposition, despite the presence there of her associate counsel, and that in her dual capacity she refused to answer questions which were proper under Rule 26, Federal Rules of Civil Procedure, and reduced to a shambles all

attempts by counsel for the defendants to take her deposition in an orderly and normal fashion. A reading of the transcript of this deposition indicates that what happened borders on the ludicrous. Having in mind that plaintiff as a member of the bar has at least as high an obligation as a lay witness to behave in an orderly and legal fashion, and to submit to orders of this Court relative to the taking of her pretrial deposition, I rule that her behavior on December 9 was tantamount to a refusal to submit to discovery, which forms an additional legally sufficient basis for the dismissal of this action.

Judgment for the defendants, with costs.