**FLOTECH, INC. and Fluoramics Inc., Plaintiffs,**

v.

**E.I. DU PONT de NEMOURS COMPANY, Defendant.**

Civ. A. No. 83–3395–Y.

United States District Court, D. Massachusetts.

Dec. 31, 1985.

**360**

Lawrence G. Cetrulo, David P. Rosenblatt, Burns & Levinson, Boston, Mass., for plaintiffs.

Pierce O. Cray, Jerome M. Leonard, Ropes & Gray, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

On November 1, 1983, FTI Flotech, Inc. ("Flotech") and Fluoramics, Inc. ("Fluoramics")[1] instituted this action against E.I. Du Pont de Nemours & Company ("Du Pont"). The plaintiffs, Fluoramics and Flotech, are, respectively, the manufacturer and the former principal distributor and marketing agent of a motor oil additive product called "Tufoil" (pronounced "tough-oil"). By their complaint, exhibits and documents, Flotech and Fluoramics assert that Du Pont disparaged or defamed their product, Tufoil, by a Du Pont press release issued February 1, 1980, and by the subsequent republication of the form or substance of this press release. In the allegedly offending press release, Du Pont announced that it would no longer sell certain Du Pont products, including its trademarked TEFLON products and its untrademarked fluorocarbon micropowder, polytetrafluoroethylene ("PTFE"), for use as ingredients in oil additives or oils for lubricating internal combustion engines. The complaint asserts claims for common law product defamation and product disparagement by Fluoramics, Count I, and by Flotech, Count II, and for unfair and deceptive trade practices in violation of the Massachusetts Consumer Protection Act, Mass.Gen.Laws ch. 93A, §§ 2 and 11, by Fluoramics, Count III, and by Flotech, Count IV. For each count Flotech alleges damages in the amount of $15 million, plus interest and costs.

Jurisdiction is pleaded on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332, with an amount in controversy exceeding $10,000 exclusive of interest and costs. Flotech is a Massachusetts corporation with a principal place of business in Framingham, Massachusetts. Fluoramics is a New Jersey corporation

---

1. For convenience the Court will refer to both plaintiffs as "Flotech." By this, the Court makes no suggestion that the two plaintiffs are one, merely that their stated causes of action are identical as the parties now appear before the Court.

with a principal place of business in Upper Saddle, New Jersey. Du Pont is a Delaware corporation with a principal place of business in Wilmington, Delaware. Jurisdiction over Du Pont is properly exercised pursuant to the Massachusetts Long-Arm statute, Mass.Gen.Laws ch. 23A, § 3(a)–(d).

Pursuant to Fed.R.Civ.P. 56, Du Pont now moves for summary judgment or, in the alternative, for partial summary judgment on the grounds that (a) the First Amendment bars the action in its entirety, (b) Flotech's claims for lost profits fail as a matter of law absent evidence in the present record that satisfies the causation standards for proof of special damages, and (c) former Mass.Gen.Laws ch. 93A, § 3(1)(b) precludes Flotech's "consumer protection" claims.

## I. *Background*

Fluoramics manufactures and sells the motor oil additive Tufoil. The invention of Fluoramics' President, Franklin Reick, Tufoil is a blend of polytetrafluoroethylene particles. Du Pont manufactures and sells PTFE. TEFLON is Du Pont's registered trademark for several of its products, including PTFE. In addition to its trademarked TEFLON PTFE, Du Pont also sells untrademarked PTFE micropowders. Prior to February 1, 1980, Fluoramics purchased TEFLON for use in Tufoil from Du Pont and also acknowledged the TEFLON trademark on the Tufoil label.

Incorporated in 1978, Flotech serves as one of Fluoramics exclusive distributors for Tufoil. Flotech had been engaged in the promotion, distribution and sale of Tufoil to retailers, as well as to commercial and industrial users. Flotech and Fluoramics assert that Tufoil improves engine performance, increases fuel economy, reduces pollutant emissions, reduces internal engine friction and facilitates cold weather starts.

On February 1, 1980, Du Pont issued a press release which stated in its entirety:

WILMINGTON, Del., Feb. 1—The Du Pont Company today announced it will immediately discontinue supplying its "Teflon" fluorocarbon resins or untrademarked fluorocarbon micropowder for use as ingredients in oil additives or oils for lubricating internal combustion engines.

The decision was reached after a review of data available within the Company and from outside sources showed, in Du Pont's opinion, that these resins are not useful in such products.

During the past several years, numerous oil additives or engine treatment products have been introduced in the United States and abroad. Promotion for some of these products claims improved engine performance, increased fuel economy and reduced emissions, citing Du Pont's "Teflon" fluorocarbon resin as the active agent.

As the number of oil additives products has increased, so have the inquiries Du Pont has received as to the utility of "Teflon" resins in such applications. The Company gathered data from within the Company and outside sources to assess the claims regarding "Teflon" fluorocarbon resins.

"Teflon" is Du Pont's trademark for its polytetrafluoroethylene (PTFE) products.

The press release was widely disseminated to the automotive press as well as to the automobile editors of various newspapers. Flotech contends that Du Pont repeated the press release or its substance to a variety of consumers, governmental agencies, corporations and media representatives, initially in 1980 but also continuing for several years. Flotech further contends that after a meeting with protesting Fluoramics representatives on March 5, 1980, Du Pont issued a private letter to Fluoramics purporting to exempt Tufoil from the scope of the press release. Apparently, Du Pont declined to issue the letter publicly or forward it to the recipients of the original press release.

Until February, 1980, Flotech had utilized both Du Pont's name and Du Pont's TEFLON trademark in the marketing of Tufoil. As a consequence of the issuance and republication of the press release, Flo-

tech alleges a loss of business, sales, and opportunities to expand.

Specifically, Flotech charges that Du Pont "meant, intended to mean and was understood to mean by persons reading the statement that all oil additives or lubricants made with 'Teflon' (PTFE) for use in internal combustion engines, of which Tufoil is one, are useless products in that they do not improve engine performance, increase fuel economy, reduce emissions, reduce friction, or facilitate cold weather starts." The allegations of defamation or disparagement of product rest on this assertion.

## II. *Summary Judgment*

In deciding whether summary judgment is appropriate in this case, the Court first looks to Fed.R.Civ.P. 56 which requires a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Moreover, the Court must view the record "in the light most favorable to ... the party opposing the motion" and "indulge all inferences favorable to the party opposing the motion." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). *See Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Voutour v. Vitale*, 761 F.2d 812, 817 (1st Cir.1985). A factual dispute is genuine when there is "substantial evidence" going beyond the allegations in the complaint and the denials of the answer to demonstrate that a material issue is controverted. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981). In the present case, the Court imposed a comprehensive pre-trial order pursuant to Fed.R.Civ.P. 16 which required each party to request the admission of each and every demonstrable fact (as opposed to inferences) which it intended to prove at trial. All parties have done so. The Court treats these several requests as affidavits for the purpose of determining whether a genuine issue of material fact exists herein.

## A. *Choice of Law*

■ As a preliminary matter, it is necessary to make a choice of law. Sitting in diversity, this Court looks to the choice-of-law doctrine of the forum state. *Klaxon Co. v. Stentor Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Supreme Judicial Court of the Commonwealth of Massachusetts has recently addressed this issue. *Bushkin Associates, Inc. v. Raytheon*, 393 Mass. 622, 632–635, 473 N.E.2d 662 (1985). Guided by the Restatement (Second) of Conflicts of Laws (1971), § 6(2), the *Bushkin* Court details a process which will identify the state with the "most significant relationship to the transaction and the parties." *Id.* at 632, 473 N.E.2d 662.

Under Section 6 of the Restatement, the factors relevant to the choice of the applicable rule of law include: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of the interested states and the relative interests of these states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination of the law to be applied. *Bushkin* at 632, 473 N.E.2d 662.

The process of determining which state has the "most significant relationship" to the issue at hand is more than simply adding up various contacts. *Bushkin* at 632, 473 N.E.2d 662. Arguably, at least three states have some interest in the matter before the Court: Massachusetts, New Jersey, and Delaware. Flotech is incorporated and has its primary place of business in Massachusetts. Fluoramics is incorporated and has its primary place of business in New Jersey. Du Pont is incorporated in and has its primary place of business in Delaware. Further, the press release originated in Delaware, although it apparently circulated widely.

■ Wrestling with each factor above in turn, the Court concludes that the material

considerations point toward applying Massachusetts law. Relevant Massachusetts law is easily determinable. It provides clear precedent directly on point. *See e.g., Bose Corp. v. Consumers Union of United States, Inc.,* 508 F.Supp. 1249 (D.Mass. 1981), *rev'd* 692 F.2d 189 (1st Cir.1982), *aff'd* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *Bruno & Stillman Inc. v. Globe Newspaper Co.,* 633 F.2d 583 (1st Cir.1980); *Stone v. Essex County Newspapers, Inc.,* 367 Mass. 849, 330 N.E.2d 161 (1975). In turn, this provides certainty, predictability, and uniformity of result. As a citizen of Massachusetts, Flotech first suffered injury, if any, within the Commonwealth. The basic policies of tort law make Massachusetts law an appropriate resource, even if these policies do not favor Massachusetts law exclusively. The needs of the interstate and international systems point to no particular state. On balance, there is no compelling reason *not* to apply Massachusetts law.

### B. *Counts I and II*

#### 1. The Statute of Limitations

Counts I and II charge Du Pont with "product defamation/product disparagement," a tort. Because the allegedly tortious conduct took place on February 1, 1980 and this lawsuit was not commenced until November 1, 1983, Du Pont argues that the action is barred by the Massachusetts three year statute of limitations for tort actions. Mass.Gen.Laws ch. 260 § 2A. Flotech first counters that the Statute of Limitations does not bar an action to recover damages flowing from Du Pont's initial press release and its subsequent republication because they constitute a "continuing tort."

#### (a) The "Continuing Tort" Doctrine

Massachusetts courts have only applied the continuing tort theory in nuisance and trespass actions. In fact, as the First Circuit recognized in *White's Farm Dairy, Inc. v. DeLaval Separator Co.,* 433 F.2d 63, 67 (1970), Massachusetts courts have demonstrated a "reluctance to extend the theory further." This "reluctance" is based upon a strong judicial preference to adhere to the purposes and policies of the statute of limitations. *See Olsen v. Bell Telephone Laboratories,* 388 Mass. 171, 445 N.E.2d 609 (1983); *Wells v. New Haven & Northampton Co.,* 151 Mass. 46, 23 N.E. 724 (1890); *Ahern v. Warner,* 16 Mass. App. 223, 450 N.E.2d 662 (1983).

Case law governing the application of the statute of limitations to personal defamation actions supports these policies.[2] Given the consistent treatment usually accorded personal defamation and product defamation actions, it is not inappropriate for the Court to consider this law. *See Scott Paper Co. v. Fort Howard Paper Co.,* 343 F.Supp. 229 (E.D.Wis.1972) (collecting cases applying libel limitations periods to product disparagement actions); Restatement (Second) of Torts §§ 577, 630 (1977) (providing identical publication rules for defamation and injurious falsehood actions). Moreover, even under the continuing tort doctrine, Massachusetts courts have only permitted recovery for wrongful conduct within the applicable limitations period and precluded recovery for acts occurring outside the limitations period. *E.g., Harrison v. Textron, Inc.,* 367 Mass. 540, 552, 328 N.E.2d 383 (1975); *Stanchfield v. City of Newton,* 142 Mass. 110, 7 N.E. 703 (1886); *Inhabitants of New Salem v. Eagle Mill Co.,* 138 Mass. 8, 10 (1884); *Prentiss v. Wood,* 132 Mass. 486, 489 (1882). *See White's Farm Dairy, Inc. v. DeLaval Separator, Co.,* 433 F.2d 63, 67 (1st Cir.1970); *Town of Mansfield v. GAF Corp.,* 5 Mass. App. 551, 364 N.E.2d 1292 (1977).

**2.** *See e.g., Regan v. Sullivan,* 557 F.2d 300 (2d Cir.1977); *Hartman v. Time, Inc.,* 166 F.2d 127 (3rd Cir.1947); *Wheeler v. Dell Publishing Co.,* 300 F.2d 372, 373 (7th Cir.1962); *Moore v. Allied Chemical Corp.,* 480 F.Supp. 364 (E.D.Va.1979) (barring recovery for defamatory statements occurring prior to the limitations period); *Church of Scientology of Minnesota v. Minnesota State Medical Association,* 264 N.W.2d 152 (D.Minn. 1978); *Polchlopek v. American News Co.,* 73 F.Supp. 309 (D.Mass.1947); *McGlue v. American News Co.,* 63 F.Supp. 744 (D.Mass.1946); Restatement (Second) of Torts § 577A.

The Court concludes that, because Massachusetts courts have ruled upon the applicability of the continuing tort doctrine only with respect to actions in trespass and nuisance, it is not the function of this Court to extend the limits the courts of the Commonwealth have imposed upon themselves. Accordingly, the Court will not expand the "continuing tort doctrine" in any of the ways suggested or implied by Flotech.

### (b) The "Discovery Rule"

Flotech next argues that the "discovery rule" preserves their cause of action even if the "continuing tort doctrine" does not. The Court disagrees. The "discovery rule" serves to ensure that a plaintiff has notice of his or her legal injury before it is barred by the passage of time. *See Olsen v. Bell Telephone Laboratories, Inc.*, 388 Mass. 171, 175, 445 N.E.2d 609 (1983). The Massachusetts "discovery rule" protects a plaintiff when an "inherently unknowable" or fraudulently concealed cause of action accrues. *See e.g., Olsen* at 175, 445 N.E.2d 609; *White v. Peabody Construction Co. Inc.*, 386 Mass. 121, 129–130, 434 N.E.2d 1015 (1982). *See also Levin v. Berley*, 728 F.2d 551, 553 (1st Cir.1984). In such situations, the Statute of Limitations does not commence until the plaintiff "learns or reasonably should have learned that he or she has been harmed as a result of defendant's conduct." *E.g., Olsen*, 388 Mass. at 175–176, 445 N.E.2d 609.

Neither party offers a scintilla of evidence to show that Flotech did not learn of the offending press release on or about February 1, 1980. Thus, this harm cannot be "inherently unknowable." A cause of action accrues when "the person injured knows or in the exercise of reasonable diligence should know the facts giving rise to the cause of action." *See Frank Cooke, Inc. v. Hurwitz*, 10 Mass.App. 99, 106, 406 N.E.2d 678 (1980) (citations omitted); *Franklin v. Albert*, 381 Mass. 611, 619, 411 N.E.2d 458 (1980). This Court concludes that there is no genuine issue but that Flotech knew of potential harm as of February, 1980, even if they could not then know of the extent of that harm or all

attendant circumstances. The "discovery rule" speaks to the injury, not the extent of that injury:

> Adoption of ... [an] argument that a claim for permanent injury accrues only when the permanency is, or should have been discovered, would create an unacceptable imbalance between affording plaintiffs a remedy and providing defendants the repose that is essential to stability in human affairs. *If knowledge of the extent of injury were to control the accrual of a cause of action, the fixed time period of statutes of limitations effectively would be destroyed.* The full extent of an injury often is not discoverable for many years after it has been incurred. Under the rule proposed ..., there seldom would be a prescribed predictable period of time after which a claim would be barred.

*Olsen v. Bell Telephone Laboratories, Inc.*, 388 Mass. at 175, 445 N.E.2d 609. [Emphasis supplied by the Court.] Thus, insufficient information about either the extent of injury or extent of damages will not determine when a cause of action accrues. *E.g., Town of Mansfield v. GAF Corp.*, 5 Mass.App. 551, 555, 364 N.E.2d 1292 (1977) ("The fact that [plaintiff] did not appreciate the extent of damage until later is immaterial"); *Levin v. Berley*, 728 F.2d 551 (1st Cir.1984) (Applying the discovery rule, the court held that the plaintiff had sufficient notice of his claim when he suffered injury, even though his damages were then speculative.) *Fidler v. Eastman Kodak Co.*, 714 F.2d 192, 198–199 (1st Cir. 1983) (Under Massachusetts law "notice of likely cause," a perception that plaintiff suffered some injury by defendant's wrongdoing, suffices for a cause of action to accrue). *See also White v. Peabody Construction Co., Inc.*, 386 Mass. 121, 130, 434 N.E.2d 1015 (1982) (In declining to apply the discovery rule, the Supreme Judicial Court commented "notice is simply knowledge that an injury has occurred.")

The Court concludes that it is sufficient that, in February, 1980, Flotech had reasonable notice of Du Pont's conduct and

that any failure to then appreciate the likelihood of damage is immaterial. Given this analysis, the Court rules that the "discovery rule" will not save Flotech's cause of action.

### 2. Product Disparagement and Product Defamation

What has just been said seems to dispose of any cause of action accruing on or about the date of Du Pont's February 1, 1980 press release. Viewing the record favorably to Flotech, the Court notes that Flotech implicitly argues that, even if this is correct, subsequent republication of the press release triggers a cause of action not barred in any way. To address Flotech's concerns, the Court focuses directly on the February 1 press release because neither party produced any evidence that subsequently occurring defamations, if any, differed markedly in content. The Court holds that if the original release fails to state a cause of action in defamation, subsequent, substantially identical republications will similarly fail. The Court must, therefore, consider the heart of Flotech's complaint: Does Du Pont's press release "defame" or "disparage" Tufoil?

■ In *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 330 N.E.2d 161 (1975), the Supreme Judicial Court clarified libel law in light of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Under this clarification, if Flotech is a public figure, it may recover for libel only on proof of "actual malice"—willful or reckless disregard for the truth in the act of publishing the libel. To establish actual malice Flotech must show that Du Pont published a defamatory

falsehood with knowledge that it was false or in reckless disregard of whether it was false. *See generally Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 330 N.E.2d 161.

■ Whether a plaintiff is deemed a public or private figure is often crucial. For, if Flotech is deemed a private rather than a public figure, it may recover by showing Du Pont's negligence, a lower threshold than "actual malice." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 330 N.E.2d 161 (1975); *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

■ These elements of the First Amendment's "public figure" doctrine apply to product disparagement actions. *Bose Corp. v. Consumers Union of United States, Inc.*, 508 F.Supp. 1249, 1259 (D.Mass.1981) (applying Massachusetts law). A product disparagement suit typically shares a defamation action's requirements of "proof of publication of the disparaging or defamatory nature of the statements involved." *Bose* at 1259. However, product disparagement actions also contain, as matter of common law, two additional requirements traditionally not found in defamation actions: that a plaintiff "prove that the offending statements are false" and that a plaintiff "prove special damages—specific pecuniary loss—before being entitled to recover." *Id.* at 1259.[3]

The decision in *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 224 Ct.Cl. 583 (1st Cir.1980) expands the First Amendment public figure analysis. Looking to *Gertz v. Robert Welch*, the First

---

**3.** Du Pont argues that Flotech confuses corporate defamation with product disparagement, suggesting: "[W]here the plaintiff is a corporation, product disparagement is sometimes confused with the closely related tort of corporate defamation. Conceptually the two torts are easily distinguishable. Defamation of a corporation injures the reputation of the corporation itself, while product disparagement injures the reputation of its products." *Bose Corp. v. Con-*

*sumers Union of United States, Inc.*, 508 F.Supp. 1249, 1259 (D.Mass.1981). *See System Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1138 n. 6 (3rd Cir.1977) for a thoughful review of this and related terminology.

Although this distinction appears to be important, for reasons later explained, the Court does not reach this issue.

Circuit identifies three classes of public figures: "public figures for all purposes," "involuntary public figures" who become public figures through no purposeful action, and "persons [who] are public figures for a limited range of issues." *Bruno & Stillman*, 633 F.2d at 588; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 351–352, 94 S.Ct. 2997, 3009, 3012–3013, 41 L.Ed.2d 789 (1974).

Du Pont suggests that Flotech belongs to the last category, "limited purpose public figures": those who have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Bruno & Stillman* at 588, citing *Gertz* at 352, 94 S.Ct. at 3013. To decide whether Flotech has "thrust" itself into a particular public controversy, the Court undertakes a two-step "particularized determination": first, it inquires whether the controversy "preceded the alleged defamation," and, if so, it next examines "the nature and extent" of Flotech's "participation in the particular controversy giving rise to the defamation." *See Bruno & Stillman*, 633 F.2d at 591, citing *Gertz* at 352, 94 S.Ct. at 3013.

Although the parties disagree upon the circumstances under which these issues may be decided by the Court as matter of law or must be submitted to the jury, the Court reaches none of these concerns. Rather, the Court looks first to a threshold issue.

The First Amendment's "public figure doctrine," discussed in some detail above, presumes that the offending text is capable of a defamatory meaning. Implicit in case law, this presumption is critical to the instant case for, as the Court stated previously, if the original press release fails to state a cause of action in defamation, all substantially similar subsequent republications will also fail.

For the reasons explained immediately below, the Court rules that neither the original press release nor its reiterated substance possess defamatory meaning as matter of law. Because this threshold issue is dispositive, the Court need not, and

does not, rule on the applicability of the "public figure doctrine" to the facts of this case.

### 3. The Press Release

Summary procedures should be used sparingly where motive, intent, or state of mind are at issue. *Arsenault v. Allegeheny Airlines, Inc.*, 485 F.Supp. 1373, 1378 (D.Mass.), *aff'd* 636 F.2d 1199 (1st Cir.), *cert. denied* 454 U.S. 481, 102 S.Ct. 105, 70 L.Ed.2d 93 (1980), citing *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (where terminated employee brought defamation action against former employer, district court granted motion for summary judgment). *See also Maiorana v. MacDonald*, 596 F.2d 1072, 1076–1077 (1st Cir.1979); *Loeb v. Globe Newspaper Co.*, 489 F.Supp. 481, 487 (D.Mass.1980). Moreover, "great circumspection is required" in such cases where the party opposing the motion provides the court some indication that it can produce the requisite quantum of evidence to enable it to reach the jury on its claim. *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975), *cert. denied* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

On the other hand, a party against whom summary judgment is sought is not entitled to a trial simply because he has asserted a cause of action to which a state of mind is a material element. *Hahn v. Sargent*, 523 F.2d 461, 463; *Loeb v. Globe Newspaper Co.*, 489 F.Supp. 481, 487–488. Consequently, at the same time that the Court acts cautiously to avoid foreclosing a genuine issue of fact, the Court must allow a motion when it determines a party is entitled to a judgment as matter of law.

In a defamation action where First Amendment principles are involved, summary judgment is often an appropriate procedure for resolving the case. *New England Tractor-Trailer Training of Connecticut, Inc. v. Globe Newspaper Co.*, 395 Mass. 471, 480, 480 N.E.2d 1005 (1985); *Edgartown Police Patrolmen's Ass'n v. Johnson*, 522 F.Supp. 1149, 1151 (D.Mass. 1981) (where the Court allowed defendant's motion for summary judgment in an action

for defamation against a police chief and others where plaintiff alleged corruption of the police force in a letter appearing in a newspaper). This would not be the first time a court allowed a motion for summary judgment for an alleged libel because it held the offending article not libelous, either in the sense alleged by the plaintiff or otherwise. *Brady v. Hearst Corporation,* 281 F.Supp. 637 (D.Mass.1968). *See Loeb v. Globe Newspaper Co.,* 489 F.Supp. 481, 487–488 (where the publisher of a New Hampshire newspaper and certain of its employees brought libel claims against a Boston newspaper, district court judge granted a motion for summary judgment upon finding the offending items non-defamatory). Thus, it is for the Court to decide whether a statement can reasonably be defamatory in character. *Lambert v. Providence Journal Co.,* 508 F.2d 656, 658 (1st Cir.), *cert. denied,* 423 U.S. 828, 96 S.Ct. 45, 46 L.Ed.2d 45 (1975). *See also Harkaway v. Boston Herald Traveler Corp.,* 418 F.2d 56, 58 (1st Cir.1969).

■ It is well-established that a publication is defamatory if it tends to injure one's reputation in the community and exposes that person to hatred, ridicule or contempt. *Arsenault v. Allegheny Airlines,* 485 F.Supp. 1373, 1378 [other citations omitted], *aff'd,* 636 F.2d 1199 (1st Cir.1980), *cert. denied* 454 U.S. 821, 102 S.Ct. 105, 70 L.Ed.2d 93 (1981). The test is "whether in the circumstances, the writing discredits the plaintiff in the minds of any considerable respectable class of the community." *Id.* at 1378, quoting *Mabardi v. Boston Herald Traveler Corp.,* 347 Mass. 411, 413, 198 N.E.2d 304 (1964) [other citations omitted]. *See also Tropeano v. Atlantic Monthly Co.,* 379 Mass. 745, 751, 400 N.E.2d 847 (1980); *Stone v. Essex County Newspapers, Inc.,* 367 Mass. 849, 853, 330 N.E.2d 161 (1975). Moreover, the words of the alleged defamation should be read in a natural sense with the meaning they would convey to mankind in general. *Brady v. Hearst Corporation,* 281 F.Supp. 637, 640, citing *Lyman v. New England Newspaper Publishing Co.,* 286 Mass. 258, 360, 190 N.E. 542 (1934).

Although not bound by the decision in *Sharon v. Time Inc.,* 575 F.Supp. 1162 (S.D.N.Y.1983) (using New York law to deny a motion to dismiss), this Court finds its scheme of analysis reasonable and particularly useful. Omitting the citations to New York law upon which the factors are based, the *Sharon* court inquires: Are the offending words reasonably susceptible of defamatory connotation (a) when read in the context of the article in which they appear? and (b) when paying attention to the particular phraseology used in the purportedly defamatory statement? *Id.* at 1165.

■ Massachusetts courts have adopted a substantially similar standard in the analysis of whether the purported defamatory statement is fact or opinion, another threshold question. In fact or opinion analysis, the statement must be examined in its totality, in the context in which it was uttered or published, considering all the words used, not merely particular phrases or sentences, giving weight to cautionary terms used by the person publishing the statement, and considering all of the circumstances surrounding the statements, including the medium by which the statement is disseminated and the audience to which it is published. *Fleming v. Benzaquin,* 390 Mass. 175, 180–181, 454 N.E.2d 95 (1983), citing *Cole v. Westinghouse Broadcasting Co., Inc.,* 386 Mass. 303, 309, 435 N.E.2d 1021, *cert. denied* 459 U.S. 1037, 103 S.Ct. 449, 74 L.Ed.2d 603 (1982). *Cf. Pritsker v. Brudnoy,* 389 Mass. 776, 452 N.E.2d 227 (1983).

Turning to the press release itself in the context of a motion for summary judgment, the Court must use care not to interfere with the jury's role by treating as non-defamatory a statement that a reasonable juror may fairly read in context as defamatory. *Sharon v. Time Inc.,* 575 F.Supp. 1162, 1165.

(a) Particular Phraseology

At the outset the Court rules that there is no genuine issue of material fact as to the words of the press release itself. Turn-

ing to the first paragraph, the first sentence thereof reads: "The Du Pont Company today announced it will immediately discontinue supplying its 'Teflon' fluorocarbon resins or untrademarked fluorocarbon micropowder for use as ingredients in oil additives or oils for lubricating internal combustion engines."

In its essence, Du Pont announces that "it" will stop supplying "its" "Teflon" fluorocarbon resins or untrademarked fluorocarbon micropowder. Looking for the grammatically natural meaning, the Court deems the pronoun "it" and the possessive pronoun "its" to mean "Du Pont's." Continuing, it seems reasonably clear that Du Pont's resins and micropowder will not in the future be supplied "for use as ingredients" in oil additives or in lubricating oils for internal combustion engines. In sum, the Court understands this as stating: Du Pont will not supply certain of Du Pont's products for use in automotive engine lubricating oils. Applying the standards articulated above, the Court rules that nothing in this paragraph defames or disparages Flotech, Fluoramics, or Tufoil.

Paragraph two is more difficult: "The decision was reached after a review of data available within the Company and from outside sources showed, in Du Pont's opinion, that these resins are not useful in such products." The Court reads the words to say that Du Pont's decision was reached after a review of data generated from within the company and from outside sources. Applying the standards above, the Court determines that nothing in the first phrase defames or disparages Flotech, Fluoramics or Tufoil.

Paragraph two continues, however. The available data revealed to Du Pont that "these resins" "are not useful" "in such products." The first phrase, "these resins," must be understood in light of the first paragraph where "resins" are defined as "its," i.e., those belonging to Du Pont. Similarly, "are not useful" must be understood in reference to "these resins." Thus, Du Pont's resins are not useful. However, the press release goes on to limit their lack

of utility to "such products," a term indicating the "oil additives or oils for lubricating internal combustion engines" of paragraph one.

▆▆▆▆ There is another crucial phrase. The prepositional appositive, "in Du Pont's opinion," critically influences the natural meaning of the second sentence in paragraph two. Construing this as a whole, the Court reads that: it is Du Pont's opinion that Du Pont's resins and Du Pont's micropowders are not useful in automotive engine lubricating oils. Significantly, the Court holds that the natural interpretation of these words indicates that the belief is Du Pont's *opinion*. An opinion is not actionable in defamation because:

> Under the First Amendment, there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and jury but on the competition of other ideas.

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–340, 94 S.Ct. 2997, 3006–3007, 41 L.Ed.2d 789 (1974); cited with approval in *Underwood v. Digital Equipment Corp., Inc.*, 576 F.Supp. 213, 217 (D.Mass.1983); *Lyons v. New Mass Media, Inc.*, 390 Mass. 51, 59, 453 N.E.2d 451 (1983); *Cole v. Westinghouse Broadcasting Co., Inc.*, 386 Mass. 303, 308, 435 N.E.2d 1021, *cert. denied* 459 U.S. 1037, 103 S.Ct. 449, 74 L.Ed.2d 603 (1982). Applying the standards above, the Court holds that the words of the second paragraph are not actionable because they lack defamatory meaning and because they are opinion.

The first sentence of paragraph three is straightforward: "During the past several years, numerous oil additives or engine treatment products have been introduced in the United States and abroad." Neither party disputes this statement of fact. Sentence two declares: "Promotion for some of these products claims improved engine performance, increased fuel economy and reduced emissions, citing Du Pont's 'Teflon' fluorcarbon resin as the active agent." This statement is true as to Tufoil. Issued under Fluoramics' name with their New

Jersey address, the advertising circular submitted with the complaint proclaims that an 8 ounce can of Tufoil [produces] "better mileage, performance, cold starts, engine life." The circular lists directions for use and mentions "TEFLON" in bold face as a registered trademark of Du Pont. Thus, promotion for Tufoil (certainly "one" of "these products") explicitly makes the performance claims described in Du Pont's press release and undeniably "cites Du Pont's 'Teflon' fluorocarbon resin as the active agent." The Court rules that nothing in paragraph three is defamatory or disparaging as to Flotech, Fluoramics, or Tufoil.

Paragraph four states that "as the number of oil additives products has increased, so have the inquires Du Pont has received as to the utility of 'Teflon' resins in such applications." Neither party seriously disputes this statement. The last sentence in paragraph four reads: "The Company gathered data from within the Company and outside sources to assess the claims regarding 'Teflon' fluorocarbon resins." This reiterates earlier information and is not disputed, though Flotech may dispute the quality of the information gathered. The Court holds that paragraph four contains nothing defamatory or disparaging as to Flotech, Fluoramics, or Tufoil.

Similarly, paragraph five is a one sentence declaration of undisputed fact: "'Teflon' is Du Pont's trademark for its polytetrafluoroethylene (PTFE) products." This sentence is not actionable in defamation.

### (b) Context, Circumstance, and Connotation

 Finally, can the press release be deemed contextually defamatory, even if the statement or its substantive repetition is facially non-defamatory? This question raises echoes of the common law doctrine of libel *per quod.* Libels *per quod* were statements, not actionable on their face, which become so by reason of the peculiar situation or occasion upon which the words are written or, alternatively, statements which are not injurious on their face in their usual and natural significance, but only in consequence of extrinsic facts and requiring innuendo. Black, H., *Black's Law Dictionary,* at 825, 28 (5th ed. 1979).[4] Thus, inferences which might be drawn by a considerable and respectable segment of the community can make a publication actionable. *Smith v. Suburban Restaurants, Inc.,* 374 Mass. 528, 530, 373 N.E.2d 215 (1978), citing *Mabardi v. Boston Herald-Traveler Corp.,* 347 Mass. 411, 414, 198 N.E.2d 304 (1964).

Flotech points to favorable publicity regarding Tufoil and its inventor Franklin Reick during the 1970's, thereby suggesting that to certain public and specialty consumers the press release was understood to impugn Tufoil. Flotech also calls attention to a March 5, 1980 meeting where Franklin Reick and various Du Pont employees discussed the February 1 press release. For purposes of this motion, the Court accepts as true that, after Fluoramics submitted several technical papers and articles concerning the efficacy of Tufoil and Franklin Reick also made a presentation, Du Pont agreed to provide a letter exempting Tufoil from the press release.

 While the letter, issued March 10, 1980, stated that the press release was not intended to apply to Tufoil, Du Pont did not retract the press release. Further, Du Pont declined to circulate this letter in the same channels. Flotech makes note of the statement included in the March 10th let-

---

**4.** An innuendo is a section of the complaint which sets forth the inference which allegedly harms the plaintiff. Where words are defamatory on their face, it is not necessary to plead innuendo. *See Lyman v. New England Newspaper Publishing Co.,* 286 Mass. 258, 190 N.E. 542 (1934); *Friedman v. Connors,* 292 Mass. 371, 375, 198 N.E. 513 (1935). If the words of the offending item are incapable of a defamatory meaning, innuendo will not make them so. *See Colby Haberdashers, Inc. v. Bradstreet Co.,* 267 Mass. 166, 166 N.E. 550 (1929). The innuendo cannot be used to enlarge the natural meaning of the words actually used. *Lambert v. Providence Journal Co.,* 508 F.2d 656, 659 (1st Cir.), *cert. denied* 423 U.S. 828, 96 S.Ct. 45, 46 L.Ed.2d 45 (1975).

ter: "As we have informed you, we have not and do not plan to run any performance tests of your current product. Thus, we can express no opinion as to its efficacy." [5] While these events might go to "actual malice" if that issue were to be reached, they do not render the February 1 press release defamatory by connotation.[6] Taken as true, these allegations are insufficient to manufacture defamation of Tufoil within the four corners of the press release. Even with every inference favoring the plaintiffs, the Court holds these allegations insufficient to establish defamation in context. The connection between the written cause and the purported effect is simply too attenuated.

▪▪▪▪ Still, in this contextual analysis, can the offending item be viewed as "of

and concerning" the plaintiff or, here, "product?" *See New York Times Co. v. Sullivan,* 376 U.S. 254, 288, 292, 84 S.Ct. 710, 730, 732, 11 L.Ed.2d 686 (1964); *New England Tractor-Trailer Training of Connecticut, Inc. v. Globe Newspaper Co.,* 395 Mass. 471, 480 N.E.2d 1005 (1985) (affirming the "of and concerning" standard, at 474 and 477, 480 N.E.2d 1005.) [7] *See also Smith v. Suburban Restaurants, Inc.,* 374 Mass. 528, 529, 373 N.E.2d 215 (1978); *Murchnick v. Post Publishing Co.,* 332 Mass. 304, 305–306, 125 N.E.2d 137 (1955). Taking every inference in favor of Flotech and Fluoramics, the Court holds that the press release, in form and substance, cannot be regarded as "of and concerning" Tufoil.[8] Interestingly, Flotech aids the Court in reaching this conclusion.

---

**5.** Apparently the tests of Tufoil were conducted in 1977: "These tests were run in 1977; nevertheless there is no reason to believe that the essential technology relied upon for additive functionality has changed." Memorandum from John Imbalzano to Robert Blanchfield, October 26, 1979.

**6.** Also arguably going to "malice" is the alleged hostility of Du Pont's Marketing Manager Robert Blanchfield when he placed "Tufoil II" on the top of a list of "Snake Oil Producers" and inquired prior to the press release: "Program to kill ready?" Blanchfield Letter, September 18, 1979; Blanchfield Memo, December 26, (year uncertain).

**7.** *New England Tractor-Trailer* moves beyond a purely subjective test to adopt a rule of negligent defamation: "In any event we take this opportunity to make clear that a plaintiff may establish that the defendant's words were of and concerning a plaintiff by proving at least that the defendant was negligent in publishing *words which reasonably could be interpreted to refer to the plaintiff." Id.,* 395 Mass. at 479, 480 N.E.2d 1005 [Emphasis added]. The Court makes it clear that this is a connotative analysis which rests on context: "The question is not so much who was aimed at, as who was hit." *Id.* at 478, 480 N.E.2d 1005, *see* 478–479, 480 N.E.2d 1005.

**8.** Under Delaware law, the alleged defamatory statement need not refer specifically to the plaintiff before it is actionable. *Avins v. White,* 627 F.2d 637, 643 (3rd Cir.), *cert. denied,* 449 U.S. 982, 101 S.Ct. 398, 66 L.Ed.2d 244 (1980) (allowing the plaintiff to maintain his action in defamation). However the vast weight of case law involves an offending item which actually

names the plaintiff or product. *See e.g., Wolston v. Reader's Digest Ass'n, Inc.,* 443 U.S. 157, 159, 99 S.Ct. 2701, 2703, 61 L.Ed.2d 450 (1979); *Hutchinson v. Proxmire,* 443 U.S. 111, 116–117, 99 S.Ct. 2675, 2678–2679, 61 L.Ed.2d 411 (1979); *Time Inc. v. Firestone,* 424 U.S. 448, 452, 96 S.Ct. 958, 964, 47 L.Ed.2d 154 (1976); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 325–326, 94 S.Ct. 2997, 3000, 41 L.Ed.2d 789 (1974); *Bose Corp. v. Consumers Union of United States, Inc.,* 692 F.2d 189, 191–195 (1st Cir.1982), 508 F.Supp. 1249, 1252–1254 (D.Mass.1981); *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 585, 224 Ct.Cl. 583 (1st Cir.1980); *Harkaway v. Boston Herald Traveler Corp.,* 418 F.2d 56, 57–58 (1st Cir.1969); *National Foundation for Cancer Research, Inc. v. Council of Better Business Bureaus, Inc.,* 705 F.2d 98, 99 (4th Cir.1983), *cert. denied,* 464 U.S. 830, 104 S.Ct. 108, 78 L.Ed.2d 110; *Golden Bear Distributors v. Chase Revel, Inc.,* 708 F.2d 944, 953 (5th Cir.); *Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 267–269 (3rd Cir.1980); *Waldbaum v. Fairchild Publications, Inc.,* 627 F.2d 1287, 1290 (D.C.Cir.), *cert. denied* 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980); *Stone v. Essex County Newspapers, Inc.,* 367 Mass. 849, 851–853, 330 N.E.2d 161 (1975); *Brady v. Hearst Corporation,* 281 F.Supp. 637, 641 (D.Mass.1968); *Reliance Insurance Co. v. Barrons,* 442 F.Supp. 1341, 1354, 1355–1358 (S.D.N.Y.1977); *Trans World Accounts, Inc. v. Associated Press,* 425 F.Supp. 814, 817 (N.D.Cal. 1977).

*But see* two cases in which the alleged defamation did not mention the plaintiff by name: *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (ruling no defamation existed) and *Edgartown Police Patrolmen's Ass'n v. Johnson,* 522 F.Supp. 1149 (D.Mass.1981) (holding no defamation existed).

Although meaning to argue that no prior controversy existed regarding Tufoil, Flotech notes that the letters of inquiry, purportedly received by Du Pont after the press release issued, do not refer to Tufoil, concern other products, or seek general information. Plaintiff's Memorandum of Law at 23–24, October 1, 1980. This information further supports this Court's holding that Du Pont's press release cannot be viewed as "of or concerning" Tufoil by context, circumstance or connotation.

This Court does not hold that inference or innuendo in its common usage can never rise to the level of defamation. Nor does the Court rule that failure to name the product specifically will always foreclose a cause of action. However, on the specific facts of this case and after analyzing both the substance and context of the offending item, the Court rules that, absent actionable defamation, Du Pont's motion for summary judgment must be allowed.

### C. *Counts III and IV*

Counts III (Fluoramics) and IV (Flotech) allege that Du Pont's actions were unfair and deceptive practices under Mass.Gen. Laws ch. 93A. The statute of limitations defense discussed above has no vitality here since a four year statute of limitations applies to such actions. Mass.Gen.Laws ch. 260, § 5A. Instead, Du Pont here contends that the "interstate commerce exception" in the original version of Chapter 93A bars both of these counts. Flotech concedes that Du Pont would have qualified for this exemption were it not for the fact that this exemption has been repealed, and the repealer acts retroactively to erase the exemption as to conduct prior to its effective date. Memorandum In Support of Opposition to Defendant's Motion to Dismiss at 23 n. 4. The issue is thus whether the repeal of the interstate exemption operates retroactively. In its earlier Motion to Dismiss, Du Pont argued the point but this portion of the motion was denied. Marginal Order, August 6, 1984. While this interlocutory ruling would normally operate as law of the case, recent legal developments

in the courts of the Commonwealth compel reconsideration of this issue.

As of the date of the Du Pont press release, February 1, 1980, former § 3(1)(b) of ch. 93A provided:

Nothing in this chapter shall apply to ...

(b) trade or commerce of any person of whose gross revenue at least twenty percent is derived from transactions in interstate commerce, excepting however transactions and actions which (i) occur primarily and substantially within the commonwealth....

Mass.Gen.Laws ch. 93A, § 3(1)(b), as amended through 1969 Mass. Acts 814, § 2. On July 7, 1983, the Governor of Massachusetts approved a repeal of the above "interstate commerce exception." 1983 Mass. Acts chapter 242. As an emergency measure, the Governor declared the repeal effective as of July 20, 1983.

Since the decision on the motion to dismiss, both Massachusetts appellate courts have had occasion to address the possible retroactive effect of the "interstate commerce exception." On January 10, 1985, the Supreme Judicial Court suggested that the repealer had no retroactive effect, *Bushkin Assoc., Inc. v. Raytheon Co.*, 393 Mass. 622, 637, 473 N.E.2d 662 (1985) and six months later the Massachusetts Appeals Court squarely "decline[d] to give the repealing statute retroactive effect." *Goldstein Oil Company v. C.K. Smith Company, Inc.*, 20 Mass.App. 243, 251, 479 N.E.2d 728 (1985).[9]

Flotech argues that this Court should not overturn an earlier ruling on point made in the context of Du Pont's motion to dismiss because, on questions of state law, a United States District Court is only bound by the holdings of the highest appellate court of that state. *See Salemme v. Ristaino*, 587 F.2d 81, 87 (1st Cir.1978). In this argument, Flotech implies that the Court should ignore the logic and express conclusion of *Goldstein*. On the contrary, this Court is duty-bound to apply the law of the Commonwealth as it

**9.** For the complete discussion of this issue, *see* *Goldstein* at 250–251, 479 N.E.2d 728.

determines it would be applied if the case were decided in state court. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).[10] *See generally, Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny. To that end, the First Circuit has not hesitated to apply Massachusetts law as declared by the Massachusetts Superior Court where no Massachusetts appellate court has spoken to the particular issue. *See Local Div. 589, Etc. v. Comm. of Mass*, 666 F.2d 618, 626 n. 21, 645 (1st Cir.1981), *cert. denied*, 457 U.S. 1117, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1982) (Fn. 21 at 626). Thus, on matters of state law, this Court need not close its eyes to a well reasoned, consistent interpretation of state law by the Massachusetts Appeals Court. *See* B. Kaplan, "Do Intermediate Appellate Courts Have a Lawmaking Function?" 70 Mass.L.Rev. 10 (1985). In the instant case, the Court must not hesitate to educate itself by considering the *Goldstein* opinion. Consequently, the Court allows Du Pont's motion for summary judgment on all claims arising out of ch. 93A because the Court determines that under Massachusetts law the repeal of its "interstate commerce exemption" does not apply retroactively.

### III. *Conclusion*

When a publication is susceptible of both defamatory and harmless meanings, it presents a question for the trier of fact and cannot be ruled nonlibelous as matter of law. *Smith v. Suburban Restaurants, Inc.*, 374 Mass. 528, 530, 373 N.E.2d 215 (1978); *Sharratt v. Housing Innovations, Inc.*, 365 Mass. 141, 143, 310 N.E.2d 343 (1974). However, when words cannot be reasonably understood in a defamatory sense or are incapable of a defamatory meaning, they are nonlibelous. *Id.*, 374 Mass. at 530, 373 N.E.2d 215.

At the worst, Du Pont's press release might be understood as defaming a component part of Tufoil. Yet, the component is Du Pont's alone. Neither Flotech nor Fluoramics can claim a proprietary interest in 'Teflon' or Du Pont's PTFE. The Court finds no case which carries product defamation to this extreme. If this is the interpretation of product defamation urged directly or indirectly by Flotech or Fluoramics, the Court's adoption of this standard would result in a dramatic expansion of the tort of product defamation and product disparagement.

The Court sees no good reason to assign this unusal meaning to this cause of action and several good reasons not to do so. First, the cause of action arises out of state law and, as such, the Court hesitates to step beyond its proper role, leaving the future development of the common law to the courts of the Commonwealth. Further, the Court fears that, on the facts of this case, such an expansion would transform Du Pont's evaluation of its own product into an assault on each and every oil additive using "TEFLON" PTFE or Du Pont micropowder. This spins the gossamer threads of liability and duty too thin.

Moreover, the components are Du Pont's own products, "TEFLON" PTFE or its untrademarked midropowders. If defamation exists at all, the legal injury is Du Pont's alone. While Flotech and Fluoramics vigorously argue harm to their actual and potential markets, this is not adequate. Although the law protects against injurious consequence, it first requires a cognizably protected interest. Not all harm is legally compensated, and, although the effect upon Flotech is lamentable, it is not actionable.

---

**10.** Speaking directly to the *Erie* cases, the Supreme Court said that "under some conditions, federal authorities may not be bound even by an intermediate state appellate court ruling.... [T]he underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law. If there is no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. *Commissioner v. Estate of Bosch*, 387 U.S. at 465, 87 S.Ct. at 1782.

In light of the above, this case is appropriate for disposition by summary judgment. The Court recognizes the policy that cases should be decided at trial on the merits but, where the record is so complete—as it is in this case—with pre-trial affidavits, requests for admissions which have been treated as affidavits for purposes of this motion, depositions, and voluminous other documentary evidence from virtually every critical witness, the Court has before it the complete factual setting.

Therefore, viewing the record and the inferences which could be drawn from it in the light most favorable to Flotech and Fluoramics, the Court now knows as much as it ever will about the allegedly disparaging five paragraphs of Du Pont's press release of February 1, 1980, having analyzed it sentence by sentence. Prolonging this litigation by submitting it to a jury would serve no purpose. Although voluminous, the evidence before the Court is insufficient to support a cause of action in defamation or disparagement of product. The Court holds that a reasonable jury could not understand the press release to defame Tufoil, Flotech, or Fluoramics. Whether by explicit reference or by implication, by natural meaning or by innuendo, on its face or in context, the Court rules Du Pont's press release of February 1, 1980, non-actionable. Likewise, the counts under chapter 93A fail for the reasons stated above.

Du Pont is entitled to summary judgment as a matter of law. SO ORDERED.